364 So.2d 1290 (1978)
STATE of Louisiana
v.
Ricky J. TERREBONNE.
No. 62270.
Supreme Court of Louisiana.
November 13, 1978.
*1291 John Wilson Reed, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-respondent.
SANDERS, Chief Justice.
A Grand Jury indicted the defendant, Ricky J. Terrebonne, for distribution of heroin, a violation of LSA-R.S. 40:966A. After trial, the jury adjudged him guilty. On April 15, 1976, the trial judge sentenced him to life imprisonment, subject to a credit for time served. On appeal, this Court affirmed the conviction and sentence. La., 354 So.2d 1356 (1978).
Defendant subsequently filed a habeas corpus petition in the district court, alleging that both the statute under which he was convicted and the sentence of life imprisonment were in violation of the Eighth Amendment of the United States Constitution and Article 1, Section 20 of the Louisiana Constitution (1974), prohibiting cruel, excessive, and unusual punishment. The trial judge denied the petition. This Court granted supervisory writs to consider defendant's allegation. La., 359 So.2d 199 (1978).
In this Court, the defendant frames his argument as follows:
"The issue presented here . . . is not whether a particular sentence selected by a judge within a statutorily-prescribed range is unconstitutionally excessive but rather whether the statute itself, providing a mandatory life sentence, is unconstitutional, because the statute itself imposes a sentence that may be cruel, excessive, or unusual. The attack here is on the unconstitutionality of the law that mandated the defendant's sentence; it is not an attack upon an individual judge's exercise of sentencing discretion within statutory limits."
At the time of the offense, the penalty was set forth in LSA-R.S. 40:966B(1), as amended by Act 207 of 1973. That section provided:
"[U]pon conviction [a violator] shall be sentenced to life imprisonment at hard labor and, in addition, may be required to pay a fine of not more than fifteen thousand dollars."[1]
In State v. Whitehurst, La., 319 So.2d 907 (1975), we noted that neither probation nor parole was barred by the statute.[2]
In a series of decisions beginning in 1975, we upheld the constitutionality of this penal clause against similar attacks. See State v. Whitehurst, supra; State v. Hopkins, La., 351 So.2d 474 (1977); State v. Stetson, La., 317 So.2d 172 (1975).
The federal courts have likewise upheld its constitutionality. See, e. g., La. Affiliate *1292 of NORML v. Guste, 380 F.Supp. 404 (E.D.La.1974); affirmed, 511 F.2d 1400 (5th Cir. 1975); cert. denied 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 96 (1975).
In State v. Stetson, supra, we stated:
"The penalty imposed is not so grossly disproportionate to the crimes charged as to shock the sense of justice. Cf. Castle v. United States, 399 F.2d 642 (5th Cir. 1968); Houle v. United States, 463 F.2d 1137 (5th Cir. 1972). Narcotic traffic is but one phase of a large scale, well entrenched criminal activity that springs from human greed and preys on man's weaknessone that turns buyers into sellers, makes addicts out of newborn infants and sets addicts to mugging, thievery, prostitution, robbery and murder to support an insatiable appetite."
In Carmona v. Ward, 576 F.2d 405 (2nd Cir. 1978), the defendant attacked the New York mandatory maximum life sentence for drug felonies as cruel and unusual punishment under the Eighth Amendment. In upholding the statute, the United States Court of Appeal, quoting from People v. Broadie, 37 N.Y.2d 100, 371 N.Y.S.2d 471, 332 N.E.2d 338, cert. denied 423 U.S. 950, 96 S.Ct. 372, 46 L.Ed.2d 287 (1975), stated:
"In assessing the gravity of a criminal offense, the primary consideration is the harm it causes society. The Legislature, in making this assessment, could properly view criminal narcotics sales not as a series of isolated transactions, but as symptoms of the widespread and pernicious phenomenon of drug distribution. Social harm in drug distribution is great indeed. The drug seller, at every level of distribution, is at the root of the pervasive cycle of destructive drug abuse.
"Defendants would minimize drug trafficking by arguing that it is not a crime of violence. Because of their illegal occupation, however, drug traffickers do often commit crimes of violence against law enforcement officers and, because of the high stakes, engage in crimes of violence among themselves.
"More significant, of course, are the crimes which drug traffickers engender in others. The seller often introduces the future addict to narcotics. The addict, to meet the seller's price, often turns to crime to `feed' his habit. Narcotics addicts not only account for a sizable percentage of crimes against property; they commit a significant number of crimes of violence as well.
"Thus the Legislature could reasonably have found that drug trafficking is a generator of collateral crime, even violent crime. And violent crime is not, of course, the only destroyer of men and the social fabric. Drug addiction degrades and impoverishes those whom it enslaves. This debilitation of men, as well as the disruption of their families, the Legislature could also lay at the door of the drug traffickers.
"Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank."
Life imprisonment is the maximum penalty for the distribution of narcotics in a substantial number of states. See, e. g., Arizona (Ariz.Rev.Stat. §§ 36-1002.02(A)-03(A) 1974 and Supp.1977); Idaho (Idaho Code § 37-2732(a)(1)(A) (1977); Missouri (Mo.Ann.Stat. § 195-200(1), (4) (Vernon Supp.1978); Montana (Mont.Rev.Codes Ann. § 54-132 (Supp.1977); Rhode Island (R.I. Gen.Laws § 21-28-4.01(A)(1) (Supp. 1977), and Texas (Tex.Rev.Civ.Stat.Ann. art. 4476-15, § 4.03 (Vernon 1976).
The defense advances a forceful argument that the life sentence is disproportionate to the crime, especially since it makes no distinction among the various classes of distributors. The identical argument was made and rejected in Carmona v. Ward, supra. As emphasized in that decision, legislative bodies can properly view criminal narcotics sales not as a series of isolated transactions, but as a pernicious system producing widespread societal harm. As so viewed, each distributor is part of the destructive system. Hence, the argument must be rejected.
We adhere to our prior decisions and hold that the statute is constitutional.
*1293 For the reasons assigned, the judgment of the district court, denying the relief sought, is affirmed.
CALOGERO, J., concurs and assigns reasons.
TATE, J., dissents and assigns reasons.
DENNIS, J., dissents for the reasons assigned by TATE, J.
CALOGERO, Justice, concurring.
I have reservations about whether the mandatory life sentence imposed upon all classes of schedule I narcotic drug distributors, including the addict who undertakes a transaction for personal motives, not profit, (see the dissent of Justice Tate in State v. Mallery, 364 So.2d 1283 [La.1978], No. 62,542) violates the prohibition against the imposition of excessive punishment embodied in Article I, § 20 of the Louisiana Constitution (1974). However, the fact that the penalty provision applicable to this defendant does not withhold from the sentencing judge the discretion to temper the severity of the sentence by suspending the term of life imprisonment and granting probation prompts me to refrain from dissenting in the present case. The decision to suspend sentence and place defendant on probation would not have necessarily precluded a period of incarceration, however. The sentencing judge vested with the discretion to suspend a life sentence and grant probation had available the option of imposing a term of imprisonment without hard labor for a period not to exceed one year as a condition of probation. C.Cr.P. art. 895B.
I respectfully concur.
TATE, Justice, dissenting.
I respectfully dissent, for the reasons assigned by me in State ex rel. Mallery v. Blackburn, 364 So.2d 1283, 1285, dissenting opinion.
NOTES
[1] Act 631 of 1977 amended the statute, adding "without benefit of probation or suspension of sentence," but this amendment was not in effect at the time of this 1975 offense and 1976 sentence. Hence, it is inapplicable to this case.
[2] We are aware, of course, that parole consideration becomes available only after a life sentence has been commuted to a term of years. See LSA-R.S. 15:574.4B and LSA-R.S. 15:571.7.