Ricky J. TERREBONNE,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden, Louisiana
State Penitentiary,
Respondent-Appellee.

No. 79–1680.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1980.

Rehearing En Banc Granted
Oct. 23, 1980.

Frank M. Johnson, Jr., Circuit Judge, filed a specially concurring opinion.

Donice Alverson, New Orleans, La. (Court Appointed), for petitioner-appellant.

George Troxell, New Orleans, La., for American Civil Liberties Union, amicus curiae.

Abbott J. Reeves, Asst. Dist. Atty., Gretna, La., Barbara Rutledge, New Orleans, La., for respondent-appellee.

Before GOLDBERG, FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges.

GOLDBERG, Circuit Judge.

On September 18, 1975, Agents Machauer and Higginbothem of the Jefferson Parish, Louisiana, Sheriff's Department and a paid informant were driving through Westwego, Louisiana to purchase heroin in an undercover capacity. In the course of their search for drugs, the three drove past the residence of petitioner, Ricky J. Terrebonne, whom they knew to be a then twenty-one years-old heroin addict. When the agents' car approached, Terrebonne left his porch and walked to the vehicle. A conversation concerning narcotics ensued. When Terrebonne was asked whether he had any heroin, he replied that he did not, but volunteered to "score a bundle" [1] for the car's occupants.[2] The agents agreed that Terrebonne should arrange this purchase for them.

Terrebonne was then driven to a phone booth to call his connection. After Terrebonne successfully contacted his connection, he, the two agents, and the confidential informant returned to his residence where he and Agent Machauer awaited the arrival of the connection. During this period of waiting, Terrebonne's brother arrived, and he, along with Agent Machauer, cleaned Terrebonne's syringe and heroin cooker.[3]

After Terrebonne and Agent Machauer waited a brief time, the connection drove up

1. A "bundle" consists of approximately twenty-five packets, or individual doses, of heroin—a small amount.

2. There is some dispute as to which party instigated the heroin purchase. Terrebonne testified that the confidential informant asked him to obtain some heroin for the agents. At a hearing on Terrebonne's motion to suppress the heroin, Agent Machauer confirmed this version of the initial conversation. However, at trial both Agent Machauer and Agent Higginbothem testified that Terrebonne first offered to purchase the drugs in the manner that we have described in text. Agent Machauer's prior testimony at the suppression hearing was not introduced into evidence at the trial.

The trial jury rejected Terrebonne's defense of entrapment. Terrebonne testified that he had never before dealt in drugs. This testimony was uncontradicted. Moreover, the record is totally devoid of evidence of Terrebonne's predisposition to distribute heroin. The jury therefore must have believed the agents' testimony and found that Terrebonne volunteered to arrange the transaction. Accordingly, we must consider it to be established facts that Terrebonne instigated the drug transaction and that this sale, arranged for the agents, was his first.

3. The exact sequence of events here, as well as the extent of police involvement in giving Terrebonne a heroin injection, is controverted.

to the front of Terrebonne's residence. Agent Machauer counted out $175 in bills which he then folded and handed to Terrebonne. Without counting the money, Terrebonne placed the bills into his pocket and left to meet the connection outside.

Terrebonne returned with approximately twenty-two packets of heroin of which he gave Agent Machauer nineteen. In return, he was either given, or allowed to return, two or three of the packets.[4]

Some months later, Terrebonne was arrested, tried, and convicted of distributing heroin in violation of La.Rev.Stat.Ann. § 40:966A (West 1977) which mandates a life sentence imprisonment term. Following the affirmance of this conviction by the Louisiana Supreme Court, *see State v. Terrebonne*, 354 So.2d 1356 (La.1978) (without opinion), Terrebonne sought a writ of habeas corpus in the state courts, contending that the sentence of life imprisonment constituted cruel and unusual punishment in violation of the eighth amendment.[5] The

Agent Machauer testified that while waiting for the connection, he and Terrebonne's brother cleaned a syringe and heroin cooker for Terrebonne to inject himself. In contrast, Terrebonne testified that these acts were accomplished after the heroin had been obtained. In addition Terrebonne testified that once the purchase had been made, Agent Machauer held Terrebonne's arm to force his vein to protrude while he injected himself.

At present we do not deem this controversy to be of significance. While one might be dismayed at the extent of police involvement in inducing this heroin addict to satisfy his addiction—indeed, while one might quite plausibly argue that this "conduct of law enforcement agents [was] so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *cf. Sherman v. United States*, 356 U.S. 639, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (heroin addict who acceded to government informer's opportunings to sell narcotics was entrapped)—no such claim is presented in Terrebonne's habeas petition and therefore no such claim is presently before us.

4. The exact number of heroin packets that were purchased is unclear. At the very least, there were twenty-two packets; at the most, there were twenty-five. We deem the exact number to be unimportant since the total quantity is, in any event, rather small.

denial of this petition was also affirmed by the Louisiana Supreme Court. *See State v. Terrebonne*, 364 So.2d 1290 (La.1978).[6] Terrebonne now appeals to this court from the district court's denial of his petition for writ of habeas corpus brought under 28 U.S.C. § 2254. For the reasons detailed below, we vacate the district court's order and remand the case for proceedings not inconsistent with this opinion.

## I.

Terrebonne contends that his sentence of life imprisonment is disproportionate to his offense and thus violative of the eighth amendment. He does not attack the authority of Louisiana to impose, consonant with the eighth amendment, a sentence of life imprisonment on heroin traffickers. Rather, he contends that, given the facts and circumstances of his offense, a life sentence is so disproportionate as to violate the eighth amendment.

There is also some question as to the manner in which Terrebonne obtained two or three packets for arranging the transaction. Terrebonne testified that he brought the bundle into his residence and surrendered it to Agent Machauer who then, in turn, returned two to Terrebonne. In contrast, Agent Machauer claimed that Terrebonne brought the bundle into the kitchen, placed it onto the counter, took two packets, and then pushed the remaining packets to the officer.

We deem this dispute whether Terrebonne took, or was given, two packets to be insignificant. Agent Machauer testified that Terrebonne received two packets because "usually for scoring for someone that's the normal procedure." In short, it was well understood that Terrebonne would receive some heroin for arranging the transaction. Furthermore, it is uncontroverted that Terrebonne received no money for his troubles and that he arranged the transaction only because he needed to inject himself to stave off the pain of heroin withdrawal.

5. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The eighth amendment applies to the states. *See Rummel v. Estelle*, —— U.S. ——, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

6. Accordingly, with regard to his eighth amendment claim, Terrebonne has exhausted state remedies.

In rejecting this claim, the district court, without opinion, adopted the recommendations of the magistrate who concluded that "[a] careful review of the opinion of the Louisiana Supreme Court . . . and the authority cited therein, discloses that the Louisiana Supreme Court correctly applied the federal constitutional principles. The issue raised in this Court is without merit. It is recommended that this Court adopt the opinion of the Louisiana Supreme Court as its opinion . . . ." Accordingly, we must review the opinion of the Louisiana Supreme Court which contains the rejection of Terrebonne's eighth amendment claim.

Even the most cursory reading of this opinion evidences the fact that the Louisiana Supreme Court never considered Terrebonne's disproportionality claim. After detailing the facts and the procedural posture of the case, the court stated that it has repeatedly upheld the statute's constitutionality and that "[t]he federal courts have likewise upheld its constitutionality."[7] 364 So.2d at 1291. The court reasoned that "legislative bodies can properly view criminal narcotics sales not as a series of isolated transactions, but as a pernicious system producing widespread societal harm. As so viewed, each distributor is part of the destructive system." Id. at 1292. The court thus held that "the statute is constitutional." Id.

Unfortunately, this holding is completely wide of the mark. Terrebonne does not contend that the statute under which he was convicted and sentenced is facially invalid. Instead, he contends that the statute's application to his offense violates the eighth amendment's prohibition against

cruel and unusual punishment because the statute's imposition of life imprisonment for his offense is disproportionate to that crime. This claim is simply not resolved by a holding that the statute is constitutional. Accordingly, the district court erroneously relied on this reasoning; its order can be upheld only if, in the present posture of this case, another basis for affirmance exists. To this inquiry, we now turn.

## II.

◼ Our consideration of Terrebonne's disproportionality claim must begin with an examination of the Supreme Court's recent decision in *Rummel v. Estelle*, —— U.S. ——, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which affirmed our decision reported at 587 F.2d 651 (5th Cir. 1978) (en banc). Rummel, who had been convicted and sentenced under the Texas habitual offender statute which mandates a life sentence after a third felony conviction, contended that his sentence was so disproportionate to his offense as to render it cruel and unusual punishment in contravention of the eighth amendment. We rejected this challenge, and the Supreme Court affirmed our holding.

A few isolated sentences in the Supreme Court's opinion might lead one to conclude that a sentence cannot be disproportionate to the severity of the punished offense solely because of the sentence's length. *See, e. g., id.*, 100 S.Ct. at 1139 ("one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative."

---

**7.** As the sole support for its proposition that the federal courts have upheld the constitutionality of La.Rev.Stat.Ann. § 40:966 A (West 1977), the Louisiana Supreme Court cited *Louisiana Affiliate of the National Organization for Reform of Marijuana Laws (NORML) v. Guste*, 380 F.Supp. 404 (E.D.La.1974), *aff'd without opinion*, 511 F.2d 1400 (5th Cir.), *cert. denied*, 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 96 (1975). To be quite candid, we find this suggestion to be amazing. In *NORML*, the district court was confronted with a "suit seeking declaratory and injunctive relief against the Federal Controlled Substances Act and the Louisi-

ana Controlled Dangerous Substance Law insofar as they make the private use of marijuana by adults a crime in Louisiana." *Id.* at 405. The court rejected a claim that the statutes imposed sanctions which were disproportionate to the conduct proscribed, "the possession and use of marijuana." *Id.* at 408. No claim was presented or considered with regard to the proscription against heroin distribution. Moreover, the court only upheld the facial validity of the law. As we discuss in text, the facial validity of the Louisiana statute is irrelevant to Terrebonne's claim that his sentence is disproportionate to his offense.

(note 11 omitted)). However, because the Court qualified such blanket statements, *see id.* at 1139 n.11 ("This is not to say that a proportionality principle would not come into play in the extreme example mentioned by the dissent . . . if a legislature made overtime parking a felony punishable by life imprisonment."), and because numerous other passages of the opinion, as well as the manner by which Rummel's eighth amendment challenge was rejected, belie this conclusion, we believe that the proportionality principle remains applicable to challenges to length of sentence.

Reviewing its statement "that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime," *id.* at 1138, and noting that "[i]n recent years this proposition has appeared most frequently in opinions dealing with the death penalty," *id.*, the Court observed that "[b]ecause a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel." *Id.* Significantly, the Court did not state that the capital cases are of no import to the review of noncapital punishments. It thus left intact the applicability of its holding in *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), that a punishment is unconstitutionally excessive "if it (1) makes no measurable contributions to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Id.* at 592, 97 S.Ct. at 2866.

In addition, after reviewing the difficulties with Rummel's disproportionality attack, the Court stated that it "offer[ed] these additional considerations *not as inher-*

*ent flaws in Rummel's suggested interjurisdictional analysis*[8] but as illustrations of the complexities confronting any court that would attempt such a comparison." *Rummel, supra*, 100 S.Ct. at 1143 (emphasis added). Thus, the Court again endorsed the continued viability of the proportionality principle as applied to sentence length.

Moreover, the holding of the Court that Rummel's sentence did not violate the eighth amendment is itself based on the disproportionality analysis. After examining the operation of the Texas habitual offender scheme, the Court refuted Rummel's contention that the Texas recidivist program was the most severe:

> In comparing this recidivist program with those presently employed in other states, Rummel creates a complex hierarchy of statutes and places Texas' recidivist scheme alone on the top rung. This isolation is not entirely convincing. Both West Virginia and Washington, for example, impose mandatory life sentences upon the commission of a third felony.

*Id.* at 1141–1142. The Court observed that "Rummel's charts and tables do appear to indicate that he might have received more lenient treatment in almost any state other than Texas, West Virginia, or Washington." *Id.* at 1142. Nevertheless, the Court concluded that these "distinctions, however, are subtle rather that *gross.*" *Id.* (emphasis added). Since the eighth amendment requires gross, rather that just any degree of, disproportionality, *see Coker, supra*, 433 U.S. at 592, 97 S.Ct. at 2866 (quoted in text at p. 1367, *supra*), the Court's conclusion that Rummel's sentence conformed to the eighth amendment was based on its holding that, on the facts of that case, Rummel's sentence was not grossly disproportionate to the severity of his offense.[9] Thus, its utilization of the disproportionality analysis to reject Rummel's challenge to

---

8. Comparison of an offender's treatment in the sentencing jurisdiction with that imposed for the same offense in other jurisdictions is a portion of the disproportionality analysis. *See* page 11 *infra.*

9. Accordingly, the Court explicitly reserved the question whether Rummel could be imprisoned

for life solely on the basis of his last crime, the pilferage of $120.75, rather than because of his repeated criminal activity: "We need not decide whether Texas could impose a life sentence upon Rummel merely for obtaining $120.75 by false pretenses." 100 S.Ct. at 1140.

his sentence, as well as the passages of its opinion discussed above, indicate the Court's view that a sentence, because of its length, can be grossly disproportionate to the severity of the punished offense and thus violative of the eighth amendment. Since the Court therefore left intact the method employed in our *Rummel* decision, which is the view of this Court sitting *en banc*, we shall proceed to review Terrebonne's sentence by means of that analysis.

### III.

■ The disproportionality analysis which we adopted in *Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978) (en banc), *aff'd,* —— U.S. ——, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), consists of three parts. First, we must look at the nature of the defendant's crime to assess his moral turpitude and the degree of danger to which his conduct subjected society. *Hart v. Coiner,* 483 F.2d 136, 140–41 (4th Cir. 1973), *cert. denied,* 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974); *see Rummel, supra,* 587 F.2d at 659. Second, we must compare the offender's actual sentence with that which would be actually imposed in other jurisdictions. *Hart, supra,* 483 F.2d at 141–42; *Rummel, supra,* 587 F.2d at 659–60. Third, we must compare the sentencing jurisdiction's treat-

ment of this offender with the punishment imposed on other criminals. *Hart, supra,* 483 F.2d at 142; *Rummel, supra,* 587 F.2d at 660.

### A.

■ Our initial difficulty in undertaking this disproportionality analysis is satisfying the command of the *en banc* court "to consider the system as it actually works and . . . not pass on academic possibilities." *Id.* at 655. We are directed to determine the "likely probability" of the length of Terrebonne's jail term. *See id.* at 659.[10] However, given the absence of proof concerning this probability, we are unable to accomplish this task.

Terrebonne was sentenced under La.Rev. Stat.Ann. § 40:966(B) (West 1975) which then provided, in pertinent part, that an offender "shall be sentenced to life imprisonment at hard labor . . . ." However, the Supreme Court of Louisiana has held that neither probation nor parole is barred by the statute,[11] *see State v. Whitehurst,* 319 So.2d 907 (La.1975), although parole is available only after a life sentence has been commuted to a term of years. *See State v. Terrebonne, supra,* 364 So.2d at 1291 n.2.[12]

10. Under this mandate we are to consider potential means by which Terrebonne's sentence of life imprisonment can be reduced to a lesser term such as by good time crédits and parole. *See id.* at 657–59. The Supreme Court agreed that these possibilities must be assessed in determining the actual severity of the punishment imposed. *See* 100 S.Ct. at 1142–43.

11. The record indicates that the trial court was unaware that it had the option of suspending Terrebonne's life sentence and granting probation with or without a special term of one-year's incarceration under La.Code Crim.Pro. Ann. art. 895 B (West Supp.1980):

THE COURT:
As you know, you've been found guilty of the crime of distribution of heroin. This Court has no choice in what it may do. The Legislature has prescribed the punishment that is mandatory. I must sentence you to what I do, you understand that?
MR. TERREBONNE:
Yes, sir.
THE COURT:
I have no choice. The Court sentences you to life imprisonment at hard labor. You will be committed to the Louisiana Department of

Corrections for execution of said sentence. I will give you credit for any time served in this matter. I wish you good luck, somehow something will work out for you down the line.
Needless to say, we are quite disturbed by this error at sentencing, especially given the obvious lack of enthusiasm on the part of the trial court for the life sentence that it felt it was compelled to impose. It is quite possible that Terrebonne was deprived of liberty without due process of law because the trial court failed to consider the alternative punishments that it had authority to impose. *Cf. Hicks v. Oklahoma,* —— U.S. ——, 100 S.Ct. 2227, 65 L.Ed.2d —— (1980) (defendant's entitlement to have punishment fixed by jury was deprived when jury was denied opportunity to impose lesser sentence than forty year mandatory sentence subsequently declared unconstitutional). However, because this due process claim is not presented in Terrebonne's habeas petition, we cannot address it.

12. The procedure for commutation of a life sentence is provided by La.Rev.Stat.Ann. § 15:571.7:

Given these possibilities for reduction of Terrebonne's sentence, the State argues that his sentence should not be viewed as one for life. In support of this argument, the State presses upon us statistics, contained in an appendix to its brief, indicating that the average term of imprisonment for drug offenders in Terrebonne's position is 5.4 years. It is true that we must consider these possibilities for reduction of Terrebonne's sentence; it is not true, however, that we can consider statistics contained in a brief to determine the "likely probability" of what that term will be. Accordingly, we must remand the case so that the district court can take evidence on this matter.[13]

### B.

In considering the seriousness of Terrebonne's offense, the State argues that we should take cognizance of the fact that drug abuse is a matter of grave concern to our society, a problem that engenders concomitant criminal activity. The State points to the following reasoning of the Supreme Court of Louisiana:

> It is a matter of common knowledge, and it is a fact, that social conditions in this state are adversely affected by the pervading traffic in and use of drugs. This condition is a serious menace to good social order, which law seeks to protect and maintain. . . . In light of these conditions the facts relied upon by the

Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary he may apply for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor may commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had or any two of them. No commutation under the provisions of this Section shall reduce the period of incarceration to less than ten years and six months.

Although this section has been subsequently repealed, see Louisiana Act 490 of 1979, § 2, the Louisiana Supreme Court has held that Terrebonne is entitled to parole, see State v. Terrebonne, 364 So.2d 1290, 1291 & n.2 (La. 1978), and we consider this holding to be the law of the case.

defense do not demonstrate that the legislative wisdom expressed in the contested statute violates any constitutional limitation on its power, particularly that which proscribes cruel and unusual punishment.

It is no defense to this prosecution that distribution of drugs is not a violent crime and consequently punishment for this offense should not be on a par with second-degree murder and aggravated kidnapping. Assuming the punishments are equal, traffic in narcotics is an insiduous crime which, although not necessarily violent, is surely as grave. Indeed, the effect upon society of drug traffic is pernicious and far-reaching. For each transaction in drugs breeds another and in the case of heroin the degeneracy of the victim is virtually irreversible. Compared to the effect of drug traffic in society, isolated violent crimes may well be considered the lesser of the two evils.

*State v. Mallery,* 364 So.2d 1283, 1285 (La. 1978).

The State has again missed the point of the proportionality doctrine in arguing that in *each and every case* of drug distribution we must consider the societal harm caused by drug trafficking as a whole without regard to the facts of the particular case under review. It is quite true that the trade in drugs is an ugly enterprise which preys upon both the physical and psycholog-

13. The average term of years for drug offenders like Terrebonne is relevant to the determination of the "likely probability" of Terrebonne's jail term. From this proof, it can be inferred that Terrebonne will serve a similar term. Obviously, the logical leap in making this inference is quite large. The fact that most drug offenders serve 5.4 years hardly necessitates the conclusion that Terrebonne will not be incarcerated for life since he has no legally enforceable right to commutation of his sentence or to parole. Thus, proof that Terrebonne has applied for and been denied commutation would sufficiently rebut the inference drawn from the average sentences of drug offenders so as to compel a court to consider his sentence to be one for life. Otherwise, the State would forever preclude review of Terrebonne's sentence by continual protestations that the possibility of commutation and parole remains. We do not believe that the Supreme Court intended such a de facto repeal of the eighth amendment.

ical weaknesses of man, and that this enormous danger to society may justify severe sanctions in many or most distribution cases. Thus, this argument may be sufficient to preserve the *facial validity* of La. Rev.Stat.Ann. § 40:966 B (West 1977).[14] However, the great potential harm to society can justify such harsh treatment in *all cases* of distribution only "if individual traffickers may constitutionally be punished for the social harm caused by the drug traffic as a whole." Note, *Disproportionality in Sentences of Imprisonment,* 79 Colum.L. Rev. 1119, 1145 (1979).

Acceptance of this argument would necessarily eliminate the proportionality principle as applied to individual cases. This application of the principle is founded on the premise that the legislature may constitutionally set a punishment proportioned to the degree of danger posed by the normal range of proscribed conduct, but that an individual case may so substantially deviate from this norm that the imposition of that punishment for that particular offense violates the notion of just deserts and renders the sanction grossly disproportionate to the offense. *See generally id.* Thus, a court faced with an attack on a sentence as being disproportionate to a particular offense must determine the gradations of culpability that may exist within the range of conduct proscribed by the statute. *See, e. g., People v. Wingo,* 14 Cal.3d 169, 121 Cal.Rptr. 97, 534 P.2d 1001 (1975); *In re Foss,* 10 Cal.3d 910, 112 Cal.Rptr. 649, 519

P.2d 1073 (1974). If we examine Terrebonne's offense in light of the danger posed by drug distribution as to a whole, we are in effect ignoring these degrees of culpability. A disproportionality attack on a sentence imposed for a distinct offense focuses on that distinct offense. The Supreme Court has indicated that these attacks may be brought under the eighth amendment. Accordingly, we must consider only the particular offense in this case; we cannot sweep into our analysis the harm posed by the conduct of others.[15]

Thus, on remand, the district court, in assessing the seriousness of Terrebonne's offense under our *Rummel* analysis, should consider the danger and moral turpitude presented by his particular crime. It should consider, *inter alia,* Terrebonne's age, the small amount of heroin involved, and the fact that he distributed heroin to adults as opposed to children. The court should also consider the uncontradicted facts that Terrebonne was an addict at the time of the transaction,[16] that he distributed heroin to receive a dose necessary to stave off the pain of withdrawal, that he did not distribute heroin for pecuniary gain, and that he had never before distributed any drugs.

### C.

Finally, the district court should compare Terrebonne's sentence with those which would be imposed in other jurisdictions for the same conduct and with those imposed in Louisiana for other criminal acts.[17] In

14. We express no opinion on this point.

15. Our conclusion that we must consider only the danger posed by the offense under review is bolstered by the common sense distinction between the harm posed by a large drug wholesaler and that created by someone who sells one dose of heroin. In the former case, a court would be quite justified in viewing the danger as going substantially beyond that caused simply by the drug transaction; the large dealer sets in motion a chain of danger. One could hardly make the same claim about the latter offender. The proportionality principle demands that these gradations be considered in reviewing a sentence.

Our conclusion is also supported by the fact that a persuasive argument can be made that collateral harm caused by drug traffic, the crimes of acquisition, stems not from the physi-

cal effects of addiction but rather from the fact that the drugs are illegal. The danger of apprehension and the concomitant supply shortage forces up the cost of the drugs. To hold an addict like Terrebonne responsible for these crimes violates the principle of just deserves; to impose responsibility for these crimes upon the dealer who sets the price, in contrast, does not. *See generally* Note, *Drug Abuse, Law Abuse, and the Eighth Amendment: New York's 1973 Drug Legislation and the Prohibition Against Cruel and Unusual Punishment,* 60 Cornell L.Rev. 638, 647–50 & n.50 (1975).

16. At trial, Terrebonne testified that he was no longer addicted to heroin.

17. Comparison of the Louisiana penalty for Terrebonne's offense with the punishment imposed in Louisiana for other criminal conduct rests on the rationale that "although isolated

making these comparisons, the district court should consider those statutory schemes as they actually work just as it must assess the "likely probability" of Terrebonne's jail term. *See Rummel, supra* 587 F.2d at 660.[18]

We recognize that what we ask of the district court is quite a complicated task. Nevertheless, the proportionality principle, embodied within the eighth amendment's proscription against cruel and unusual punishment, demands no less.

VACATED and REMANDED for proceedings not inconsistent with this opinion.

FRANK M. JOHNSON, Jr., Circuit Judge, specially concurring:

I concur in the majority's conclusion that this case must be remanded to the district court for further consideration in light of the Supreme Court's recent opinion in *Rummel v. Estelle*, —— U.S. ——, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). I write separately because I have difficulty with that part of the majority's opinion that states that *Rummel* "endorse[s]" the use of proportionality analysis in considering non-capital Eighth Amendment claims and that *Rummel* leaves "intact" the particular mode of proportionality analysis adopted by the Fifth Circuit in its decision in *Rummel* en banc. *See Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978) (en banc).

I read the Supreme Court opinion to provide that, although proportionality analysis may be appropriate in extremely egregious situations (e. g., if a legislature made overtime parking a felony punishable by life

imprisonment, 100 S.Ct. at 1139 n.11), courts should be *extremely* reluctant to use it. This is so (1) because a court's "Eighth Amendment judgments should not be, or appear to be, merely the subjective views of individual Justices; judgment should be informed by objective factors to the maximum extent possible," 100 S.Ct. at 1139, *citing and quoting Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); and (2) because a judgment that a particular length of sentence is grossly disproportionate to the severity of the crime is extremely unlikely to be capable of being informed by objective factors. *See, e. g.*, 100 S.Ct. at 1135. Although the Court's opinion gives little indication of what the "objective factors" capable of informing such a judgment to the maximum extent possible might generally be, the Court does seem to me to make clear that it holds in disrepute the three prongs of proportionality analysis which were suggested by our circuit in its opinion in *Rummel* en banc and which are reiterated by the majority today: (1) study of the nature of the crime, *see* 100 S.Ct. at 1139, (2) comparison of the punishment with that imposed for similar crimes in other jurisdictions, *see* 100 S.Ct. at 1139–43 (criticizing such a comparison as extremely complicated and likely to be inconclusive), and (3) comparison of the punishment with that imposed for other crimes in the same jurisdiction, *see* 100 S.Ct. at 1143 n.27.

On its face, Terrebonne's habeas corpus petition seems to me to present in many

---

excessive penalties may occasionally be enacted, e. g., through 'honest zeal' . . . generated in response to transitory public emotion, the Legislature may be depended upon to act with due and deliberate regard for constitutional restraints in prescribing the vast majority of punishments set forth in [Louisiana's] statutes." *In re Lynch*, 8 Cal.3d 410, 105 Cal.Rptr. 217, 227–228, 503 P.2d 921, 932–33 (1972). Since "[s]imilar penalties for related offenses enacted by the same legislation are subject to the same 'zeal' as the punishment in question," *In re Foss, supra*, 112 Cal.Rptr. at 660, 519 P.2d at 1084, the district court should not consider that legislation in making its comparison of Terrebonne's penalty and others provided in Louisiana.

**18.** In discussing the comparison of the attacked penalty with others provided in the same jurisdiction, the *Rummel* court did not indicate that those other penalties should be considered in light of what the actual jail terms would likely be in light of possible methods for reduction of sentence. *See Rummel, supra*, 587 F.2d at 660. However, this approach is warranted for the reasons stated by the *en banc* court in concluding that the "likely probability" of jail terms should be considered in comparing the attacked sentence with the punishments imposed for the offense in other states. *See id.*

ways a much more compelling case for application of proportionality analysis than did *Rummel*. Here the claim is that Terrebonne will have to spend the rest of his life in prison as a result of his brokering a single purchase of a small amount of heroin for undercover police officers, at the insistence of the officers, in order to get for himself only a badly needed fix.[1] In *Rummel*, by contrast, it was established that the defendant, as a convicted 'recidivist,' could expect to be eligible for parole within 12 years.[2] Because this is on its face a more compelling case, I agree with the majority that a remand is necessary. As the Supreme Court's opinion in *Rummel* indicates, a hearing must be held for the purpose of determining whether Terrebonne's claim of disproportionality is supported by "objective factors." Unlike the majority, however, I do not interpret "objective factors" to include only those factors suggested by our prior three-prong Fifth Circuit analysis that the Supreme Court in *Rummel* so criticized. The Supreme Court made clear that that analysis is suspect. Reliance on this suspect analysis by litigants should not be encouraged, nor should courts be led to interpret its prongs as limits on a proportionality hearing's scope. In my opinion, the identification and development of the "objective factors" necessary to a determination of disproportionality in this case are best left to the participants below in the hearing before the district court.

On this basis I concur in the judgment of the court.

## ON REHEARING AND REHEARING EN BANC

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges.

### BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

1. As the majority notes, the trial judge in sentencing Terrebonne stated as follows:

    THE COURT:
    As you know, you've been found guilty of the crime of distribution of heroin. This Court has no choice in what it may do. The Legislature has prescribed the punishment that is mandatory. I must sentence you to what I do, you understand that?
    MR. TERREBONNE:
    Yes, sir.
    THE COURT:
    I have no choice. The Court sentences you to life imprisonment at hard labor. You will be committed to the Louisiana Department of Corrections for execution of said sentence. I will give you credit for any time served in this matter. I wish you good luck, somehow something will work out for you down the line.

*Cf. Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (statute making it a crime to be addicted to the use of narcotics violates the Eighth and Fourteenth Amendments). *See also Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977) (Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such"). It may well be appropriate on remand to consider the applicability of these Eighth Amendment cases to Terrebonne's claim. Each was cited, with apparent approval, by the Supreme Court in *Rummel*.

2. *See also* 100 S.Ct. at 1140 ("In this case . . . we need not decide whether Texas could impose a life sentence upon Rummel merely for obtaining $120.75 by false pretenses.").