United States Court of Appeals
Fifth Circuit

**F I L E D**

April 25, 2003

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals for the Fifth Circuit

---

m 02-41137
Summary Calendar

---

DAVID AUSTIN,
INDIVIDUALLY AND NEXT FRIEND OF "JOHN E", A MINOR;
SANDRA AUSTIN,
INDIVIDUALLY AND AS NEXT FRIEND OF "JOHN E", A MINOR,

Plaintiffs-Appellees,

VERSUS

PATRICK A. JOHNSON,
INDIVIDUALLY AND IN OFFICIAL CAPACITY;
CLERAN GIPSON,
DRILL INSTRUCTOR, STAR BOOT CAMP, HARRISON COUNTY, TEXAS,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

Before HIGGINBOTHAM, SMITH, and
  CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

"John E," a minor,[1] was caught stealing a candy bar and, as punishment, was ordered to attend a one-day boot camp, where he suffered severe symptoms from heat stroke. John E's parents sued the camp operator, Harrison County, the camp director, and a camp worker, alleging, *inter alia*, the violation of his Fourth, Eighth, and Fourteenth Amendment rights. The district court granted plaintiffs' partial motion for summary judgment denying the defendant camp directors the defenses of qualified and official immunity. We affirm in part, reverse in part, and remand.

## I.

A justice of the peace found John E guilty of taking candy from a concession stand at school and sentenced him to three months' probation, a $30 fine, and a one-day boot camp of his choosing. Sandra Austin, John E's mother, and David Austin, his stepfather, selected the "Strength Through Academics and Respect," or STAR, boot camp conducted by the Harrison County Juvenile Probation Department. The Austins met with the camp director, Sergeant Major Patrick Johnson, who explained that John E would be required to perform physical exercises and should bring Gatorade. John E received a required physical examination at which the doctor found him capable of engaging "in military style training and exercise."

On June 26, 1999, the date of the camp, the Austins dropped John E off at a local high school at 5:30 a.m. Though permitted to stay and observe, the Austins left, planning to return twelve hours later when the camp was scheduled to end. In the morning, John E and the other children performed exercises, including push-ups, sit-ups, side straddle hops, and jogging. One exercise required John E to carry a ruck sack weighing between 57 and 70 pounds. He complained to Johnson that the ruck sack straps dug into his shoulders and that he was having difficulty performing the exercises. Johnson stated that he felt John E was lazy or had an attitude problem.

At lunch, John E drank two cups of Gatorade but did not finish his meal. During the afternoon march, he complained to Johnson that he felt sick, but was told to continue. John E collapsed several times before he was taken into the school building between 2:00 and 4:00 p.m. The activity log kept by defendant Cleran Gipson, a drill instructor, states that John E became dehydrated and "fell out" at 3:00 p.m.[2] Johnson rendered first aid, but at some point, John E vomited and became unconscious. An ambulance was called at 4:42 p.m.

John E suffered from serious conditions such as hyperpyrexia[3] and acute rhabdomyolysis[4] resulting from heat stroke; he was admitted to a local hospital, where his temperature was 107.9° Fahrenheit, and later was transferred to Children's Hospital in

---

[1] After plaintiffs sued in 2001, John E reached the age of majority and asserts claims in his own capacity; his parents continue their claims for medical expenses.

[2] Gipson testified that "fell out" means to become unconscious.

[3] An exceptionally high fever.

[4] The destruction of skeletal muscle cells.

Dallas, where he remained for over two weeks, suffering from acute renal failure, acute hepatitis, and pancreatitis. He has since made a full recovery without permanent damage.

Suing under 42 U.S.C. § 1983, plaintiffs contend that Johnson and Gipson inflicted cruel and unusual punishment and failed to summon needed medical care in violation of John E's Fourteenth and Eighth Amendment rights. They also assert Texas state law claims for negligence, gross negligence, fraud, and breach of fiduciary duty.[5] Plaintiffs filed a partial motion for summary judgment that Johnson and Gipson are not entitled to the defense of qualified immunity and official immunity. In turn, Johnson and Gipson filed a cross-motion for summary judgment based on the same defenses. The district court considered both motions and granted plaintiffs' partial motion for summary judgment.

## II.

The "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). By granting plaintiffs' motion for partial summary judgment preventing defendants' use of a qualified and official immunity defense, the court denied defendants' cross-motion for summary judgment. We have jurisdiction, because the court determined plaintiff's allegations made out the violation of a clearly established constitutional right; the denial of qualified immunity did not rest on the sufficiency of

___

[5] The fraud and breach of fiduciary duty claims were brought only against Johnson.

evidence as to whether the alleged conduct occurred. *Pelletier*, 516 U.S. at 312-13.

## III.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The initial question is whether, "taken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We cannot pretermit whether a constitutional violation is properly alleged. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

Second, even where the officer violated constitutional rights, we ask whether "the contours of the constitutional right in question were sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Estep v. Dallas County, Texas*, 310 F.3d 353, 360 (5th Cir. 2002) (citation omitted). Although there does not have to be a case directly on point, *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998), the plaintiff should seek to identify "cases of controlling authority in [the] jurisdiction at the time of the incident which clearly establish the rule on which they seek to rely," or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 918-19 (5th Cir. 2000). An official's conduct is therefore objectively reasonable unless "all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on." *Id.*

At summary judgment, all inferences are typically drawn in favor of the nonmoving party. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court followed *Saucier*, which states that in a qualified immunity determination, the facts should be construed in the light most favorable to the party *asserting the injury*. 533 U.S. at 201 (emphasis added); *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002). Though the court granted plaintiffs' motion to deny defendants use of qualified immunity, it also considered, and implicitly denied, defendants' cross-motion for summary judgment. Because the court drew all reasonable inferences in favor of plaintiffs, we will do the same, treating this as defendants' motion for summary judgment on the basis of qualified immunity.

IV.

Plaintiffs assert two Eighth Amendment claims: that the STAR camp constituted cruel and unusual punishment and that defendants were deliberately indifferent to John E's medical needs. The court concluded that plaintiffs alleged a violation of both, without even deciding whether the Eighth Amendment applies to a one-day boot camp.[6] It stated that "[t]he use of the heavy weighted ruck sacks which cause pain and injury, along with the forced run in the hot sun which endangers health is an obvious case of unnecessary and wanton infliction of pain totally without penological justification." As for the deprivation of John E's medical needs, the court summarily found that, taking the facts in a light most favorable to plaintiffs, "deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain."

A.

State defendants do not incur Eighth Amendment liability unless "the individual was being held in custody after criminal conviction." *Johnson v. City of Dallas*, 61 F.3d 442, 444 (5th Cir. 1995) (citation omitted). Defendants do not deny that John E was convicted of a crime or that his one-day of boot camp served as punishment. Rather, they contend that John E was not incarcerated, noting that he was free to select the date and location of his punishment, and that his parents could (but declined to) observe his participation.

In *Ingraham v. Wright*, 430 U.S. 651, 669-70 (1977), the Court found the Eighth Amendment inapplicable to corporal punishment in schools, observing that schoolchildren have little need for the amendment's protection because schools are open institutions where children may leave without physical restraint. A prisoner's incarceration, by contrast, "deprives him of the freedom to be with family and friends and to form the other enduring attachments of normal life." *Id.* (internal quotation marks and citations omitted). The Court found that the Eighth Amendment is implicated once the state "has secured a formal adjudication of guilt in accordance with due process of law." *Id.* at 671.

A judge found John E guilty, and while at

---

[6] Plaintiffs state that Johnson and Gipson never raised this argument in the district court and therefore are barred from arguing it on appeal. This ignores the fact that the *plaintiff* has the burden to rebut a qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

STAR he was in the custody of the state following a due process hearing. Though a one-day youth offender camp can hardly be equated to incarceration in a penitentiary, John E was not free to leave; he was a prisoner. Campers were threatened with jail time if they did not comply with the physical exercise regimen; Gipson deposed that any camper who failed to comply was loaded into an awaiting van and taken to jail. All of this confirms the custodial nature of John E's punishment, so we conclude that the Eighth Amendment applies.[7]

### B.

The court erred, however, in concluding that the camp regimen violated the proportionality principle of the Eighth Amendment. An individual judge "must not apply his own subjective view of what is cruel and unusual. Rather, his judgment 'should be informed by objective factors to the maximum possible extent.'" *Sampson v. King*, 693 F.2d 556, 569 (5th Cir. 1982) (citations omitted). Under a "totality of conditions test," conditions of confinement must not impose the wanton and unnecessary infliction of pain. *Howard v. King*, 707 F.2d 215, 218 (5th Cir. 1983). In *Howard*, for example, inmates stated an Eighth Amendment claim where they were forced to perform hard labor fifty-six hours a week for over a year.[8] *Id.* at 220.

---

[7] We do not decide whether an individual is protected by the Eighth Amendment while subjected to other "non-prison" forms of punishment such as community service or drug rehabilitation.

[8] *See also Jackson v. Cain*, 864 F.2d 1235, 1245-46 (5th Cir. 1989) (holding that a prison inmate established an Eighth Amendment claim where he alleged that hard labor had aggravated a
(continued...)

The Constitution "does not mandate adoption of any one penological theory." *Ewing v. California*, 123 S. Ct. 1179, 1201 (2003) (citation omitted). In fact, a "sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation." *Id.* The exercises apparently were designed so that anyone, regardless of physical fitness level, could complete them. Requiring youthful offenders to perform military-styled exercises for one day is neither cruel nor unusual; it is a deliberate policy choice to instill much-needed discipline. *Weems v. United States*, 217 U.S. 349, 379 (1962). Jogging and carrying a weighted sack at a Texas high school cannot be cruel and unusual punishment one day and an accepted form of athletic conditioning the next.

The Eighth Amendment proportionality principle applies to noncapital sentences and contains four principlesSS"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors." *Ewing*, 123 S. Ct. 1186 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (Kennedy, J., concurring)). Strict proportionality between the crime and sentence is unnecessary. *Id.*

After concluding that the exercise regimen constituted cruel and unusual punishment, the district court summarily found that the punishment was disproportionate to the crime. We disagree, emphasizing the reasonable

---

[8](...continued)
previous medical condition). Though John E had seen a doctor the previous week to treat a viral infection, defendants were not notified of his condition.

flexibility that should be accorded local authorities to deal with wayward youths. Cases that have found disproportionate sentences involve long-term imprisonment, so the nominal punishment of a one-day boot camp cannot pass muster.[9]

### C.

Plaintiffs also contend that Johnson and Gipson were deliberately indifferent to John E's medical needs.[10] Deliberate indifference requires that Johnson and Gipson "both knew of and disregarded an excessive risk" to John E's health or safety. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th

Cir. 2001). Viewing the evidence in a light favorable to plaintiffs, John E fell several times during the afternoon march and was left behind. He was taken inside the school sometime after 2:00 p.m., where, according to Johnson and Gipson, he began vomiting. Gipson's official report states that at 3:00 p.m. John E became "dehydrated and fell out." Gipson testified that the term "fell out" means to become unconscious. An ambulance was not called, however, until 4:42 p.m.

Defendants do not dispute the accuracy of Gipson's log, nor its literal interpretation. Before 3:00 p.m., defendants' conduct was perhaps only negligent, but their failure to call an ambulance for almost two hours while John E lay unconscious and vomiting rises to the level of deliberate indifference. Since *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Defendants' contention that no case has specifically proscribed the withholding of medical treatment for boot camp attendees reads the right too narrowly; officers need only have "fair warning" that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 678 (2002). Given the serious medical consequences of dehydration, a reasonable person would not have waited nearly two hours to call an ambulance once John E became unconscious.[11]

---

[9] *See e.g.*, *Solem v. Helm*, 463 U.S. 277, 303 (1983) (finding disproportionate a life sentence without the possibility of parole for writing a no-account check for $100 following several prior convictions); *Terrebonne v. Blackburn*, 624 F.2d 1363, 1371 (5th Cir. 1980) (en banc) (remanding for determination of whether a life sentence is disproportionate to the offense of drug distribution).

[10] Though it is not apparent from their fourth amended complaint, plaintiffs bring a separate due process claim under the Fourteenth Amendment, contending that John E's right to bodily integrity was violated. The Eighth Amendment, however, "serves as the primary source of substantive protection to convicted prisoners." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Although both the Eighth and Fourteenth Amendments protect the safety and bodily integrity of prisoners, the legal standards are virtually identical. *Berry v. City of Muskogee*, 900 F.2d 1489, 1494 n.6 (10th Cir. 1990). Because the Eighth Amendment, as "an explicit textual source of constitutional protection," defines the limits of government action, it controls over "the more generalized notion of substantive due process." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted). We therefore construe plaintiffs' complaint as raising a claim under only the Eighth Amendment.

[11] The court did not determine whether defendants are entitled to qualified immunity on either plaintiffs' Fourth Amendment or supervisory liability claims, so we decline to rule. *White v. Walker*, 950 F.2d 972, 977 (5th Cir. 1992). We note, however, that the gravamen of neither claim is apparent from plaintiffs' brief or fourth amended complaint.

V.

The court denied defendants official immunity for negligence, gross negligence, breach of fiduciary duty, and fraud.[12] Texas law grants official immunity to an officer who was (1) performing discretionary duties; (2) in good faith; and (3) while acting within the scope of his authority. *City of Lancaster v. Chambers*, 833 S.W.2d 650, 653 (Tex. 1994). The good faith element is "substantially" the same as the federal test for qualified immunity, inquiring whether "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* at 656; *see also Cantu v. Rocha* 77 F.3d 795, 804 (5th Cir. 1996). As with qualified immunity, summary judgment is the appropriate vehicle for deciding official immunity. *Albright v. Dep't of Human Servs.*, 859 S.W.2d 575, 579 & n.1 (Tex. App.SSHouston [1st Dist.] 1993, no writ).

Drawing all inferences in plaintiffs' favor, defendants' reckless indifference to John E's medical needs precludes official immunity for the negligence and gross negligence claims. Plaintiffs' fraud and breach of fiduciary duty claims center on Johnson's alleged failure to "disclose all material facts regarding the risk and dangers of the boot camp, as well as the physical regiment [sic] inflicted upon the children." The Austins contend they would not have let John E attend the STAR camp had they known he would be forced to jog with a weighted ruck sack; they do not deny, however, that, before the camp, Johnson met with them and explained that rigorous physical exercise would be involved and that John E should bring Gatorade.

Further, plaintiffs do not dispute signing a "Prevention Bootcamp Procedures" form stating that the camp would consist of various types of physical exercises including a march with weighted ruck sacks. The document also states that campers will perform calisthenics for up to one and one-half hours with rest breaks. Sandra Austin deposed that she did not believe Johnson made any false statements about the program; she wishes she had asked more questions.

Johnson acted with "objective legal reasonableness" by meeting with the Austins, having them sign a document explaining camp procedures, and verbally explaining that John E would be required to perform physical exercises. *Roe*, 299 F.3d at 413. Even after drawing all reasonable inferences in their favor, plaintiffs produce no evidence of a material misrepresentation by Johnson, so he is entitled to official immunity on the fraud and breach of fiduciary duty claims.

The order denying qualified immunity is REVERSED with respect to plaintiffs' constitutional claim of disproportionate punishment and state law claims for fraud and breach of fiduciary duty, and AFFIRMED in all other respects. The matter is REMANDED for further proceedings, as appropriate, in accordance with this opinion.

---

[12] We have jurisdiction to review the denial of official immunity, because Texas's official immunity doctrine, like the federal doctrine, relieves state officials of the burden of suit and liability for damages. *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 413 (5th Cir. 2002).