Ricky J. TERREBONNE,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden, Louisiana State Penitentiary,
Respondent-Appellee.

No. 79–1680.

United States Court of Appeals,
Fifth Circuit.

June 1, 1981.

Donice Alverson, New Orleans, La. (Court appointed), for petitioner-appellant.

George Troxell, New Orleans, La., for American Civil Liberties Union amicus curiae.

Abbott J. Reeves, Asst. Dist. Atty., John M. Mamoulides, Dist. Atty., Gretna, La., Barbara Rutledge, Asst. Atty. Gen., New Orleans, La., for respondent-appellee.

Before GODBOLD, Chief Judge, BROWN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH,

FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges.*

ALVIN B. RUBIN, Circuit Judge:

We reheard this case en banc to consider whether the eighth amendment proscribes a sentence of life imprisonment for a person convicted of the distribution of heroin. Considering the facts set forth in the record of the state criminal proceeding, including the nature of the offense and the prior record of the convicted person, as well as the sentencing alternatives available under Louisiana law, we conclude that the state statute authorizing the sentence was constitutional on its face when interpreted in the light of other provisions of Louisiana law and that the punishment imposed on Terrebonne was not cruel and unusual under the principles announced by the Supreme Court in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Accordingly, we affirm the district court judgment denying relief.

I.

In 1975, Ricky J. Terrebonne was a 21 year old heroin addict. On September 18th, two agents of the Sheriff's Department of Jefferson Parish, Louisiana, accompanied by a paid informant, encountered Terrebonne. Aware of Terrebonne's addiction, they asked him whether he had any heroin. He answered that he did not but agreed to "score a bundle" for them. This jargon describes the purchase of 25 packets of individual doses of heroin, a retail transaction. Terrebonne telephoned his "connection" (i. e. his supplier), the agents provided the funds to enable Terrebonne to make the purchase and Terrebonne left to accomplish the transaction. He returned with 22 packets. The agents took 19 and allowed him to retain three.

Some months later, Terrebonne was arrested, tried and convicted of distributing heroin. Terrebonne testified at the trial.

* Judges Coleman and Tate did not participate in the consideration or decision of this case.

He did not deny the facts set forth above, but contended that he was entrapped.[1] He admitted that his addiction required five to six packets of heroin each day, but he was not able to afford that much. He paid $10 to $12 per packet. He was employed as a carpenter earning $3 per hour, but he did not work steadily. He admitted that he had previously been convicted of two felonies, burglary and theft by fraud. His wife testified that, while she also worked, her husband was a good provider for her and their one child.

Terrebonne was convicted of violating La.Rev.Stat.Ann. 40:966 A (West 1977). That statute, on its face, prescribed a sentence of life imprisonment. He was sentenced to such a term. In passing sentence, the trial judge stated, "This Court has no choice in what it may do. The Legislature has prescribed the punishment that is mandatory."

Terrebonne contends that both the uncompromising mandatory term set forth on the face of the statute and the sentence imposed on him are so disproportionate to his offense as to violate the eighth amendment. He appealed his conviction, *State v. Terrebonne*, 354 So.2d 1356 (La.1978), then unsuccessfully sought habeas corpus in state court on the same grounds here urged. *State v. Terrebonne*, 364 So.2d 1290 (La. 1978). Having exhausted his state remedies, Terrebonne sought federal relief. The district court denied the writ.

A panel of this court construed the petition as attacking only the sentence as applied and not the facial unconstitutionality of the statute. It concluded that the eighth amendment required review of the proportionality of sentences, subscribed to the criteria for determination of proportionality formulated by this court *en banc* when it considered *Rummel*, 587 F.2d 651 (5th Cir. 1978), and remanded the case for an evidentiary hearing on proportionality, 624 F.2d 1363 (5th Cir. 1980). We voted to consider

the case *en banc*, thus vacating the panel opinion.

The trial judge stated that he was required to impose a life sentence on Terrebonne. He perhaps did not know, however, that Louisiana statutes other than the substantive criminal statute permitted him to impose sentences other than life imprisonment. The Louisiana Code of Criminal Procedure, Article 895 B, gave the trial judge discretion to suspend a life sentence and grant probation either without confinement or on condition that Terrebonne serve a term of imprisonment not to exceed one year. Such a sentence would have been served at the Parish jail, not the Louisiana State Penitentiary. Thus, while the penalty clause of the narcotics act made a life sentence mandatory on its face, it did not deprive the state sentencing judge of the authority given him by the state's Code of Criminal Procedure. *See* La.Code Crim. Pro.Ann. arts. 894.1, 895 A.

In *State v. Whitehurst*, 319 So.2d 907, 909 (La.1975), the Louisiana Supreme Court held, in considering the same statute, that "mandatory life imprisonment, *subject to probation and parole opportunities*, but imposed without judicial consideration of any attendant mitigating circumstances, is neither excessive, nor cruel and unusual." (Emphasis supplied.) *Whitehurst* was decided on October 1, 1975, and the emphasized portion of the Supreme Court decision was interpreted by Louisiana courts as allowing the probation alternatives as well as parole. Terrebonne's trial began over 17 months after *Whitehurst* was rendered, on March 8, 1977.

▮ Whether the judge was in fact mistaken in his comprehension of Louisiana law or whether his remarks were a deliberate effort to escape the painful duty of telling the defendant that he was not imposing one of the lesser sentences permissible, we need not now decide. Although the erroneous imposition of a "mandatory" life

---

1. No issue was raised concerning whether the "conduct of law enforcement agents [was] so outrageous" as to make Terrebonne's prosecution violate due process. *United States v. Russ-* *sell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1977); *cf. Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

sentence in ignorance of discretionary alternatives may violate both the Due Process Clause of the fourteenth amendment and Louisiana law,[2] Terrebonne did not raise the issue either in state court or in his federal habeas petition.[3] It is fundamental that we review only the grounds presented in the petition for habeas corpus. *Brown v. Alabama*, 619 F.2d 376 (5th Cir. 1980). We are, of course, precluded from considering any issues for which state relief has not been sought. 28 U.S.C. § 2254; *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (*en banc*).

It is significant that, at the time Terrebonne was sentenced, even a "mandatory" life sentence did not inexorably commit a defendant to prison for his natural life. A prisoner sentenced to life might apply for commutation of his sentence to a term of years. The governor might commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general and presiding judge of the court before which the conviction was had or any two of them. At that time, commutation could not reduce the period of incarceration to less than ten years and six months. *See* 1942 La. Acts No. 50, § 3 (formerly codified at La.Rev.Stat.Ann. § 15:571.7); *but see State v. Ledet*, 337 So.2d 1126 (La.1976) (legislature may not deprive governor of power to commute sentence).

The statutes authorizing this procedure were repealed, together with the 10½ year minimum, by 1979 La. Acts No. 490, § 2, after Terrebonne was sentenced. Instead, the Louisiana legislature adopted a statute providing for commutation without a minimum mandatory term. La.Rev.Stat.Ann. § 15:574.4 *as amended by* 1979 La. Acts No. 734, § 1, permits the Board of Pardons to recommend the commutation of a life sentence to a term of years, and, if commutation is granted, then to grant parole. The Board's rules, adopted October 8, 1979 (Rule 4), permit the Board to hear such applications at its discretion, that is, without exacting a minimum term. The governor's power to commute sentences upon recommendation of the Board of Pardons is conferred by the Louisiana Constitution of 1974, Art. 4, § 5(E). This power appears to have been exercised with some frequency.[4]

## II.

The petitions for habeas corpus in both the state and federal court attacked the validity of the statute itself. Terrebonne challenges its imposition of a mandatory sentence for life with no provision for tailoring the sentence in any meaningful way to the gravity of the offense, the culpability of the offender, and the circumstances of each case. This attack fails immediately when the entire pattern of Louisiana law is considered. As we have seen, despite the apparent inexorability of the single statute considered in isolation, the sentencing judge could take into account any factors that might properly weigh in favor of clemency. The state judge had a choice of alternatives

---

2. *See Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *Willeford v. Estelle*, 637 F.2d 271 (5th Cir. 1981); *State v. Foret*, 380 So.2d 62 (La.1980).

3. We note that Terrebonne might be able to attack his sentence under Louisiana's new post-conviction procedure. *See* La.Code Crim. Pro.Ann. art. 924 *et seq.*

4. *See* La. Dep't of Corrections, *Statistical Report: 1977–78; 1978–79*, 46 (1979). In 1977–78, the Board of Pardons recommended pardon or commutation in 31% of the cases heard. In 1978–79, this figure rose to 33%. We may take judicial notice of these statistics under Rule 201 of the Federal Rules of Evidence. The Report is a "source[ ] whose accuracy cannot reasonably be questioned" in light of the small numbers involved (1723 cases over two years)

and the absence of any motive to falsify the figures. Rule 201(b)(2). Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports. *See Massachusetts v. Westcott*, 431 U.S. 322, 323 n.2, 97 S.Ct. 1755, 1766 n.2, 52 L.Ed.2d 349 (1977) (Coast Guard records); *Illinois Cent. R. R. v. Tennessee Valley Auth.*, 445 F.2d 308 (6th Cir. 1971) (TVA annual report); *Skolnick v. Board of Commissioners*, 435 F.2d 361 (7th Cir. 1970) (census figures); *Brooks v. United States*, 273 F.Supp. 619, 624 (D.S.C.1967) ("official governmental reports"). *See also United States v. Hawkins*, 566 F.2d 1006, 1008 n.2 (5th Cir.), *cert. denied*, 439 U.S. 848, 99 S.Ct. 150, 58 L.Ed.2d 151 (1978) (jury plan which was public record).

in imposing a sentence on Terrebonne although he may not have been aware of them.

A conscientious sentencing judge, considering the small quantity involved in an offense, the manner in which the accused committed it, his previous record, and other appropriate factors pertaining to the individual before him, might put the defendant on probation, conditioned on his serving a one-year jail term, or imposing other conditions, or both. On the other hand, weighing the alternatives, the possibilities of parole board and executive clemency, as well as sentencing considerations appropriate to the individual, the judge might impose a life sentence.[5]

■ Given the alternatives actually available to the sentencing judge, Terrebonne's facial challenge can succeed only if Louisiana could not properly choose life imprisonment as a maximum sentence. No decision has been cited that would stigmatize as cruel and unusual the punishment enforced by such a legislative decision. In *Salazar v. Estelle*, 547 F.2d 1226 (5th Cir. 1977), we upheld a sentence of 45 years for distribution of small amounts of heroin. In light of the deference to state legislative judgments mandated by *Rummel*, we cannot say that a sentence unlikely to last much longer, and susceptible of being in fact much shorter, necessarily violates the eighth amendment. *See Carmona v. Ward*, 576 F.2d 405 (2d Cir. 1978), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1978).

### III.

We turn to the major argument, that the sentence actually imposed was cruel and unusual. Our decision is necessarily governed by *Rummel*, which upheld the Texas recidivist statute against an attack similar to the one mounted by Terrebonne. Rum-

mel had been convicted and imprisoned for three felonies: fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check in the amount of $28.36 and obtaining $120.75 by false pretenses. The recidivist statute imposed a mandatory life sentence when a convicted felon had twice before been convicted and imprisoned for felonies. Like Terrebonne, Rummel argued that, because his crimes were not so heinous as to merit life imprisonment, his sentence was grossly disproportionate to the actual crime and therefore prohibited by the eighth amendment. Although affirming an *en banc* decision of this court denying Rummel relief, *see* 587 F.2d 651 (5th Cir. 1978), the Court rejected the proportionality analysis suggested in our majority and dissenting opinions.

In his opinion for the Court, Justice Rehnquist noted:

*[O]ne could argue without fear of contradiction* by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence imposed is purely a matter of legislative prerogative.

(Emphasis supplied.) 445 U.S. at 274, 100 S.Ct. at 1139, 63 L.Ed.2d at 391. In a footnote, the majority added that a proportionality principle could come into play in an "extreme example," such as punishing overtime parking with life imprisonment. *See id.*, 445 U.S. at 274 n.11, 100 S.Ct. at 1139 n.11, 63 L.Ed.2d at 391 n.11. Although stating that one could argue the proposition that the legislature has absolute discretion to fix the sentence for any felony, the majority did not then adopt it. Instead, without further mention of the proposition or the extreme example, the Court upheld Rummel's sentence because the imposition

---

5. If the alternatives available are cruel and unusual, it is presumably because one year is too paltry a penalty to be considered and life, even though subject to the ameliorating provisions allowed by other Louisiana statutes, is cruelly long. If so, then it is necessary to develop judicial criteria for determining when the maximum sentence permitted by a statute, as well as the sentencing alternatives available under it, become cruel and unusual. If such criteria are necessary, they should be developed by an appellate court. Trial courts are best suited to hear and determine facts, not to weigh policy factors and develop criteria for constitutional gauges.

of a life sentence for the offense involved served an obvious and substantial state interest and hence was not, in fact, grossly disproportionate. *See id.*, 445 U.S. at 283–287, 100 S.Ct. at 1144–45, 63 L.Ed.2d at 396–399.

The Court determined that Texas has a right to protect its citizens from incorrigible recidivists. Although Rummel's crimes each involved a trivial amount, he had shown that he was "simply unable to bring his conduct within the social norms prescribed by the criminal law of the state." 445 U.S. at 283, 100 S.Ct. at 1144, 63 L.Ed.2d at 396. When sufficient proof, such as three felony convictions followed by imprisonment, indicates that a felon will never lead a law-abiding life, the state may remove the felon from society for a long period or permanently without inhibition from the Due Process Clause of the Fourteenth Amendment. *See id.; Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

A life sentence for the crime of distributing heroin serves substantial state interests in the same manner that state interests were served by a life sentence for recidivism in *Rummel*.[6] The state could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude:

> ... The drug seller, at every level of distribution, is at the root of the pervasive cycle of drug abuse. Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank.

*State v. Terrebonne, supra*, 364 So.2d at 1292, *quoting Carmona v. Ward, supra.* Terrebonne willingly participated in the system of distribution, knowing the effects of the drug he procured.

Not only is distribution of heroin a serious offense, but the legislature could properly find that participation in the distribution of heroin itself often manifests a propensity to criminal behavior.

> More significant, of course, are the crimes which drug traffickers engender in others. ... The addict, to meet the seller's price, often turns to crime to "feed" his habit. Narcotics addicts not only account for a sizable percentage of crimes against property; they commit a significant number of crimes of violence as well.

*State v. Terrebonne, supra*, 364 So.2d at 1292, *quoting Carmona v. Ward, supra.*

In addition, there was substantial evidence that Terrebonne must himself, as a victim of addiction, have turned to crime in order to support his habit. The State introduced evidence at trial showing that Terrebonne could not possibly have supported his $50 to $70 a day habit on his wages as an occasional carpenter (which, he admitted, amounted to only $24 a day). His criminal propensity had been shown by his own admission at trial that he had previously been convicted of two felonies, burglary and theft by fraud. It might reasonably be inferred that he habitually resorted to crime to allay his addiction.

The trial judge might properly consider Terrebonne's previous convictions in imposing the sentence. Prior convictions are often a determining factor in the length of the sentence imposed, as the Louisiana presentence report guidelines suggest. *See* La. Code Crim.Pro.Ann. art. 875(A)(1), (West Supp.1981);[7] *compare* Fed.R.Crim.P. Rule 32(c); *Herron v. United States*, 551 F.2d 62 (5th Cir. 1977).

■ Because Terrebonne's prior criminal record and the evidence of other probable criminal behavior introduced at trial indicate that the life sentence imposed on him

---

**6.** The scheme was attacked in both the state and federal courts as violating the Eighth Amendment by requiring a sentence of excessive length not for the irrationality of its sentencing scheme. Consequently, we do not consider whether a sentencing scheme may be so irrational as to deny substantive due process.

**7.** There was no pre-sentence report in this case presumably because the defendant requested immediate imposition of sentence and the trial judge proceeded to announce sentence shortly after the jury returned its verdict.

will serve the substantial state interests envisioned by the statute, we hold that Terrebonne's sentence is neither cruel nor unusual within the meaning of the Eighth Amendment.

The judgment of the district court is AFFIRMED.

REAVLEY, Circuit Judge, with whom GEE and TJOFLAT, Circuit Judges, join, specially concurring:

Terrebonne was given his sentence because he sold heroin. That ends the Eighth Amendment inquiry for me. Considerations of "other probable criminal behavior" or other factors personal to Terrebonne have no relevance to the constitutional review which should compare the sentence only to the severity of the *crime.* For this reason I do not join the final portion of the court's opinion.

JOHN R. BROWN, Circuit Judge, concurring:

Except as to the last three paragraphs I concur in Judge Rubin's opinion and as to the excepted portion I concur in Judge Reavley's concurrence.

1. The statute under which Terrebonne was convicted was phrased in mandatory terms, specifying that "upon conviction [defendant] shall be sentenced to life imprisonment at hard labor;" the Louisiana courts have held, however, that even though the statute mandated the imposition of the life sentence it did not preclude suspension of the sentence. *See State v. Mallery,* 364 So.2d 1283, 1284 (La.1978). The statute has been amended to provide for a sentence of "life imprisonment at hard labor without benefit of probation, or suspension of sentence ...." La.Rev.Stat.Ann. § 40:966 (Supp.1981).

2. Under La.Code Crim.Proc.Ann. art. 895 the sentencing judge could require as a condition of probation that Terrebonne serve a term of incarceration not to exceed one year.

3. In a brief filed in the Supreme Court of Louisiana Terrebonne alleged that the sentencing judge did not receive a presentencing report; the record before us does not reveal whether the State disputed this allegation. The district court did not make a finding of fact on this or any other point. For purposes of this appeal, I take as true Terrebonne's allegation.

FRANK M. JOHNSON, Jr., Circuit Judge, with whom GODBOLD, Chief Judge, KRAVITCH, POLITZ, HATCHETT, ANDERSON, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges, join, dissenting:

I respectfully dissent.

The facts of this case are adequately set forth in the plurality opinion as well as in the original panel opinion, *see Terrebonne v. Blackburn,* 624 F.2d 1363 (5th Cir. 1980). Suffice it to say that 21-year-old Ricky Terrebonne, a known heroin addict, while attempting to withdraw from his addiction, violated Louisiana law when he brokered a single purchase of a small amount of heroin for undercover police officers, at the insistence of the officers, in order to get for himself a badly needed fix. Upon conviction of this criminal act, Terrebonne could have received, at best, one of the two sentences: [1] (1) an enforced life sentence or (2) a suspended life sentence with or without a term of probation.[2] Without the benefit of a presentence report,[3] the sentencing judge chose and imposed the enforced life sentence. Unless a majority of the Louisiana Board of Pardons recommends a pardon or commutation of sentence and the Governor then accepts the recommendation and acts accordingly,[4] Terrebonne will spend the rest

4. Under La.Rev.Stat.Ann. § 15:574.4 the Louisiana Board of Pardons is prohibited from granting parole to a person who has been sentenced to life imprisonment until after the life sentence has been commuted to a term of years. By La.Rev.Stat.Ann. § 15:572 and La.Const. art. 4, § 5, the Governor is granted the power to commute sentences upon the recommendation of the Board of Pardons. Thus, for Terrebonne to become eligible for parole, at last three of the five members of the Board of Pardons must recommend the commutation of Terrebonne's sentence and the Governor must actually commute the sentence. *See* La.Rev.Stat.Ann. §§ 15:572, 15:574 (Supp.1981). A favorable recommendation from the Board of Pardons is similarly required for the Governor to issue a pardon. La.Const. art. 4, § 5. Actions by the Board of Pardons and the Governor in this field are totally discretionary, and "[n]o person [has] a right of appeal from a decision of the board of pardons or the governor regarding clemency." La.Rev.Stat.Ann. § 15:572.6.

The plurality points out that "[t]his power [apparently referring to the Governor's power to commute sentences] appears to have been

of his life in prison. *See* La.Const. art. 4, § 5; La.Rev.Stat.Ann. § 15:572.

As approached by the plurality, this case presents two questions: (1) Is the statutory scheme under which Terrebonne was sentenced, which imposed a mandatory sentence for life subject to possible suspension of the sentence or subsequent commutation or grant of pardon by the Governor acting upon the favorable recommendation of the Board of Pardons, so arbitrary on its face as to constitute cruel and unusual punishment under the Eighth Amendment; and (2) Was the statutory scheme applied in this case in a sufficiently arbitrary manner to constitute cruel and unusual punishment? After briefly delineating my view of the viability of the disproportionality analysis as applied to this case, I will deal with each question.

### I.

The plurality opinion acknowledges that, while the Supreme Court in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), indicated that a disproportionality analysis has only a limited use in invalidating sentences under an Eighth Amendment challenge, the *Rummel* Court nevertheless employed the concept of disproportionality. In the words of the plurality, the *Rummel* Court determined that the recidivist statute there at issue served "an obvious and substantial state interest and hence was not, in fact, grossly disproportionate." *Ante* at 1002 (*citing Rummel v. Estelle, supra*, 445 U.S. 283–287, 100 S.Ct. at 1144–45). Using an approach similar to the approach of the *Rummel* Court, the plurality inquires only whether the sentence imposed on Terrebonne under the Louisiana statutory scheme serves a "substantial state interest." Concluding that it does, the plu-

rality dismisses the Eighth Amendment challenge. I agree that the *Rummel* Court found inapplicable to the facts of that case the three-pronged disproportionality analysis that this Court had earlier applied, *see Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978); I also agree that the *Rummel* Court in fact utilized the concept of disproportionality in reaching its conclusions. Where I part company with the plurality is with its implicit conclusion that the *only* inquiry *Rummel* allows is whether the statute at issue serves a substantial state interest. In my opinion, in this case the Eighth Amendment and the *Rummel* decision require more than the plurality's cursory review.

Ricky Terrebonne's situation is readily distinguishable from the situation in *Rummel*. At issue in *Rummel* was a recidivist statute, a fact emphasized by the Supreme Court. Relying on the peculiar characteristics of recidivist statutes, the Court methodically dealt with the three-pronged analysis this Court had urged. The first prong, that of inquiry into the nature of the crime, was dismissed because the governmental interest underlying the recidivist statute was "not simply that of making criminal the unlawful acquisition of another person's property; ... [but also that of] dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Rummel v. Estelle, supra*, 445 U.S. at 276, 100 S.Ct. at 1140. Because the governmental interest was not focused on one specific crime, inquiry into the nature of the criminal acts committed by Rummel was deemed to be irrelevant. In *Terrebonne's* case, however, the governmental interest is focused on one specific crime,[5] that of distrib-

---

exercised with some frequency." *Ante* at 1000. In support of this assertion the plurality cites statistical reports of the Louisiana Department of Corrections, reports that are not part of the record before us. These reports do not reflect the frequency with which the Governor has commuted sentences, but only the frequency with which the Board of Pardons has recommended the commutation of sentences. There is no indication in the record or in any authority cited by the plurality concerning the fre-

quency with which the Governor commutes life sentences to terms of years. If a district court hearing was to be held, this would be an appropriate area for inquiry.

5. The suggestion that La.Rev.Stat. 40:966 is unique, being directed at only a part of the total evil of drug abuse, and thus the statute cannot be fruitfully compared to statutes proscribing other criminal acts reflects a simplistic analysis of criminal law. It is true that a drug statute

uting heroin. Thus, inquiry into the nature of the criminal act committed by Terrebonne is relevant, as is the question whether and to what extent the governmental interest advanced by the Louisiana statutory scheme is directed toward incarcerating for life persons who engage in the activity engaged in by Terrebonne, namely, brokering a small quantity of heroin to police officers who instigated the entire transaction and paid Terrebonne with a small portion of that heroin.

The *Rummel* Court also relied upon the particular traits of the recidivist statute to conclude that the second prong, namely, comparing punishments for similar crimes in other jurisdictions, was not helpful. As pointed out by the *Rummel* Court, recidivist statutes of different jurisdictions embody different criteria, *see Rummel v. Estelle, supra*, 445 U.S. at 279–280, 100 S.Ct. at 1141–1142. For example, some states require one or more of the underlying felonies to be "violent" to support a life sentence; others leave the imposition of a life sentence to the discretion of the judge; and others require a mandatory life sentence upon conviction of a certain number of felonies. Because of the varying requirements of the statutes, comparison was difficult. Furthermore, because the extent to which parole and probation opportunities varied from state to state, comparison of the actual sentence likely to be served was difficult, if not impossible. Such is not the case here. The elements of the crime of which Terrebonne was convicted are easily ascertaina-

ble, and closely related counterparts of this statute exist in most, if not all, American jurisdictions.[6] Moreover, comparison of the length of the sentence likely to be served is much less difficult because barring favorable action by both the Board of Pardons and the Governor—action that is purely discretionary—Terrebonne will spend the rest of his life incarcerated. *See supra* note 4. Hence, the reasons the *Rummel* Court deemed not helpful a comparison of punishments for similar crimes in other jurisdictions are simply not present in Terrebonne's situation. The reasons not being present, I believe the comparison becomes relevant and, in this case, most appropriate.

The unique characteristics of recidivist statutes also formed the basis of the Supreme Court's rejection of the validity of comparing other punishments provided by the same state for different crimes, which was the third prong of this Court's *Rummel* analysis. "If nothing else, the three-time offender's conduct supports inferences about his ability to conform with social norms that are quite different from possible inferences about first- or second-time offenders." *Rummel v. Estelle, supra*, 445 U.S. at 283 n.27, 100 S.Ct. at 1143 n.27. The extremely valid interest that states have in punishing or isolating those criminals who have demonstrated a propensity for committing criminal acts cannot easily be compared to the interest of a state in making criminal one specific act. On the other hand, it is much easier to compare the state interests underlying two statutes

could be based on a legislative conclusion that, measured "by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank." *State v. Terrebonne*, 364 So.2d 1290, 1292 (*quoting Carmona v. Ward*, 576 F.2d 405, 411 (2d Cir. 1975)). But other, if not all, statutes that focus on particular criminal activity express a concern for the far-ranging consequences of the behavior. For example, statutes proscribing forgery indicate a legislative judgment that the taking of another's property be prohibited; however, forgery statutes also reflect a concern for the stability of our banking institutions and our economy which is so dependent upon those institutions. Likewise, statutes outlawing rape embody a concern for

"the personal integrity and autonomy of the female victim;" these statutes also, however, seek to protect the "community's sense of security." *Coker v. Georgia*, 433 U.S. 584, 597–98, 97 S.Ct. 2861, 2868–69, 53 L.Ed.2d 982 (1977). Hence, statutes that outlaw drug dealing in part because of the social consequences of drug addiction are by no means unique.

6. *See, e. g.*, Ala.Code § 20–2–70 (1975) (maximum sentence of 15 years); Fla.Stat.Ann. §§ 775.082, 893.13 (Supp.1981) (maximum sentence of 15 years); Ga.Code Ann. § 79A–811(d) (Supp.1980) (maximum sentence of 15 years); Miss.Code § 41–29–139 (Supp.1980) (maximum sentence of 14 years or $15,000 fine).

making criminal two specific acts. Even though the statutes may be aimed at two completely different evils or may be aimed at one relatively isolated evil as compared to one part of an evil, statutes that focus on the prohibition of specific conduct are more readily comparable with statutes aimed at punishing and isolating recidivists.

From the foregoing, it is apparent that, although the *Rummel* Court found the three-pronged criterion urged by this *en banc* Court when it considered *Rummel* not to be helpful in analyzing an Eighth Amendment challenge to a recidivist statute, the Supreme Court did not foreclose the use of that criterion in challenges to other statutes. Moreover, when the Court acknowledged that the imposition of punishment is subject to "those strictures of the Eighth Amendment that can be informed by *objective factors*," *Rummel v. Estelle, supra*, 445 U.S. at 284, 100 S.Ct. at 1144 (emphasis supplied), it indicated a willingness to use other criteria to evaluate Eighth Amendment challenges. What the other criteria might be the Court chose not to reveal. As a member of the original panel that heard this case, I felt that the identification and development of the objective factors necessary to a determination of disproportionality in this case were best left to the participants below in a hearing before the district court. Although I continue to adhere to the position that the district court is the proper forum to identify and develop the pertinent objective factors,[7] since there is to be no district court hearing I find it appropriate for purposes of my discussion to enunciate a few possible objective factors bearing on an Eighth Amendment challenge.

One factor is the degree of judicial flexibility or discretion inherent in the sentencing process. A lengthy sentence may be cruel and unusual if it *must* be imposed upon conviction of a particular crime; that same sentence, however, might pass Eighth Amendment muster if it is selected from a range of potential punishments and imposed by a judge who is familiar with the peculiar facts of the crime and the individualized circumstances of the defendant. A second possible factor is the degree to which the severity of the punishment corresponds to the severity of punishments imposed upon defendants who share the characteristics of the defendant and who committed similar crimes within the punishing jurisdiction. In other words, the inquiry is whether similarly situated defendants are treated similarly within the jurisdiction. For example, if judges within a jurisdiction systematically exercise their discretionary sentencing authority to impose light sentences on young drug offenders who have no record of serious criminal behavior, a young drug offender with no record of serious criminal behavior who receives the maximum sentence may have been subjected to cruel and unusual punishment. Other possible objective factors exist, and my enumeration of the above two factors is not intended to impart to them greater significance than to the other unnamed factors. I delineate these two factors only as an example of the type inquiry I deem appropriate in a case such as this and because, from the undeveloped record presently before us, these factors seem to be pertinent to the facts of this particular case.

## II.

The plurality now determines that the facial challenge to the statute is meritless, reasoning that, since the sentencing judge was allowed to impose alternative sentences and could take into account any factors that might properly weigh in favor of clemency, "Terrebonne's facial challenge can succeed only if Louisiana could not properly choose

---

7. I read the plurality opinion as suggesting that the pertinent criteria should be developed by an appellate court. *See ante* at 1001, n.5. But an appellate court cannot intelligently decide a case until an adequate factual record is developed at the trial level. In this case the district court did not hold a hearing and the parties did not have an opportunity to establish facts that, under my analysis of the applicable constitutional principles, may have constituted the "objective factors" referred to by the *Rummel* Court. If such a presentation had been made at the trial level, we would now be in a position to evaluate the legal effect of the factors.

life imprisonment as a maximum sentence." *Ante* at 1001. Since I agree that life imprisonment may be constitutional in some instances of drug dealing,[8] if meaningful alternatives had in fact been available to the sentencing judge I would agree with the plurality's conclusion that the facial challenge is meritless. However, I think it obvious that the sentencing judge was not faced with meaningful alternatives. Indeed, it appears that the judge thought he had only one option.[9] But as a matter of law the judge was afforded two options. He could have sentenced Terrebonne to life imprisonment, knowing that he had no hope of release in the absence of favorable action by both the Board of Pardons and the Governor. Alternatively, he could have sentenced Terrebonne to life imprisonment, suspended the sentence, and, if desired, placed Terrebonne on probation with a condition of probation being imprisonment for a term not to exceed one year. *See* La. Code Crim.Proc.Ann. art. 895. I submit that these two options are so widely divergent as not to be options at all;[10] at the very least they do not constitute meaningful alternatives.[11]

If, as I believe, the Louisiana statute removes all *practical* discretion from the sentencing judge, the statute falls short of Eighth Amendment requirements. In practical effect, the statute requires that "every offense in a like legal category ... [receive] an identical punishment without regard to the past life and habits of a particular offender." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949); *see Woodson v. North Carolina*, 428 U.S. 280, 296–97, 96 S.Ct. 2978, 2987, 49 L.Ed.2d 944 (1976) (plurality opinion). As a common sense proposition, it is well recognized that "individual culpability is not always measured by the category of crime committed." *Furman v. Georgia*, 408 U.S. 238, 402, 92 S.Ct. 2726, 2810, 33 L.Ed.2d 346 (1972) (Burger, C. J., dissenting) (quot-

---

8. *United States v. Valenzuela,* 646 F.2d 352 (9th Cir., 1980), illustrates a case in which life imprisonment without parole imposed for drug dealing may be constitutional. In *Valenzuela* defendant was convicted of nine offenses, including one conspiracy count, seven substantive narcotic counts, and one continuing criminal enterprise count. For the conspiracy count and three of the substantive counts, he received four fifteen-year sentences, to run consecutively. For the four remaining substantive counts, he received four more fifteen-year sentences, to run consecutively. For the criminal enterprise count, he received life imprisonment without the possibility of parole. The two sixty-year terms and the life term were to run consecutively. The Ninth Circuit rejected defendant's Eighth Amendment challenge to the sentence, distinguishing the panel opinion in this case because "the district court [in *Valenzuela*] exercised its discretion under 21 U.S.C. § 848 in imposing a life sentence, based upon its finding of a long-term, large-scale, highly profitable drug operation." *United States v. Valenzuela, supra,* 646 F.2d at 354.

9. The trial judge at sentencing stated as follows:

   The Court: As you know, you've been found guilty of the crime of distribution of heroin. This Court has no choice in what it may do. The Legislature has prescribed the punishment that is mandatory. I must sentence you to what I do, you understand that? Mr. Terrebonne: Yes, sir.

   The Court: I have no choice. The Court sentences you to life imprisonment at hard labor. You will be committed to the Louisiana Department of Corrections for execution of said sentence. I will give you credit for any time served in this matter. I wish you luck, somehow something will work out for you down the line.

10. I take judicial notice that Louisiana judges are elected officials. La.Const. art. 5, § 22; *see* La.Const. of 1921, art. 7, § 69. In light of the current public concern over drug abuse, it would be unrealistic to assume that even the most dedicated Louisiana trial judge would not to some extent feel political and/or social pressures not to reduce the sentences of those convicted of distributing drugs. In *Beck v. Alabama,* 447 U.S. 625, 645 n.22, 100 S.Ct. 2382, 2393 n.22, 65 L.Ed.2d 392 (1980) the Supreme Court acknowledged the practical obstacles confronting a judge who has the option to reduce a jury recommendation of death to a lesser term. I think these obstacles are similarly significant when a judge is faced with suspending a legislatively mandated life sentence.

11. I agree with the plurality's implicit premise that, in the absence of alternative sentences a life sentence for the activity encompassed by La.Rev.Stat.Ann. § 40:966 cannot stand. I differ only in my conclusion that the *practical* effect of the statutory scheme is the removal of alternatives from the sentencing process.

ed in *Roberts v. Louisiana*, 428 U.S. 325, 333, 96 S.Ct. 3001, 3006, 49 L.Ed.2d 974 (1976) (plurality opinion). In Eighth Amendment challenges in capital cases, this proposition rises to the level of a constitutional requirement. *E. g., Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In noncapital cases, however, "the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Id.* at 605, 98 S.Ct. at 2965. This is so because

> [t]he need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases. A variety of flexible techniques— probation, parole, work furloughs, to name a few—and various postconviction remedies may be available to modify an initial sentence of confinement in noncapital cases.

*Id.* at 605, 98 S.Ct. at 2965. The Supreme Court has never been faced with a noncapital situation in which the sentencing authority, for all practical purposes, lacks discretion to impose a sentence less than life and in which, barring action on the part of the Board of Pardons as well as the Governor, the convicted defendant will, in fact, spend the rest of his life in prison.[12] In

many respects, a sentence such as Terrebonne received more closely approximates a death sentence than it does a regular prison sentence. True, the sentence Terrebonne received is not irrevocable; but its finality approaches that of a death penalty since only gubernatorial action based on a favorable recommendation from the Board of Pardons can reduce Terrebonne's sentence to less than life. Moreover, the life sentence contemplated by the Louisiana statute necessarily rejects the possibility of rehabilitation, a characteristic the Supreme Court has attributed to the death penalty. *See Rummel v. Estelle, supra*, 445 U.S. at 272, 100 S.Ct. at 1138; *see also Woodson v. North Carolina, supra*, 428 U.S. at 304, 96 S.Ct. at 2991 (plurality opinion). Indeed, the main purposes of the sentence imposed on Terrebonne seem to be deterrence and isolation, two frequently named purposes of the death penalty.

In light of the similarities between the sentence imposed in this case and the death penalty, I believe the Eighth Amendment requires that the procedures for imposing the instant sentence approximate the procedures for imposing the death penalty. This is not to imply that the two procedures should be identical; indeed, the crucial distinction between extinguishing a human life and imprisoning a person without prac-

---

**12.** My research has not revealed a Supreme Court or Fifth Circuit case addressing Eighth Amendment requirements in cases carrying mandatory life sentences without parole or probation. Rather, the cases have dealt with mandatory life sentences with parole or probation as a possibility, *Rummel v. Estelle, supra*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382, mandatory sentences less than life, *United States v. Del Toro*, 426 F.2d 181 (5th Cir. 1970) (upholding 5-year mandatory minimum sentence for selling heroin); *United States v. Drotar*, 416 F.2d 914 (5th Cir. 1969) (upholding 5-year mandatory minimum sentence for second offense of possession of marijuana); or sentences imposed in the sentencing authority's discretion within a statutorily defined range of punishment, *e. g., King v. United States*, 565 F.2d 356 (5th Cir. 1978) (upholding 15-year sentence for conspiracy to import heroin imposed consecutively on another sentence); *United States v. Bondurant*, 555 F.2d 1328 (5th Cir. 1977) (upholding life sentence for kidnapping a 4-year-old girl; sentencing judge considered defend-

ant's personal history, psychiatric reports, the nature and circumstances of the crime, and defendant's prospects for rehabilitation in imposing the maximum sentence); *Salazar v. Estelle*, 547 F.2d 1226 (5th Cir. 1977) (upholding 45-year sentence without benefit of probation for selling heroin; sentence was assessed by jury after holding a separate punishment proceeding, at which time both sides presented witnesses); *United States v. Gamboa*, 543 F.2d 545 (5th Cir. 1976) (upholding 5- and 10-year concurrent sentences for seven counts of possession of unregistered firearms without serial numbers and one count of possession of a firearm during the commission of a felony; sentence imposed after trial court reviewed a presentence report and sentence was within the 10-year per count maximum); *Howard v. Maggio*, 540 F.2d 1280 (5th Cir. 1976) (upholding 99-year sentence for armed robbery without benefit of parole, probation, or suspension of sentence; sentence was within the 5-year to 99-year statutory range and record reflected a killing by gunshot during the robbery).

tical hope of release may be recognized. But by the same token the Constitution affords defendants faced with the possibility of spending the rest of their lives imprisoned without practical hope of release greater safeguards than a defendant charged with a speeding violation. At the very least, the Eighth Amendment requires that the sentencing judge be given discretion, in the practical sense, to impose a lesser sentence than a life sentence commutable only if the Board of Pardons recommends commutation and the Governor concurs and acts.

Even if, as the plurality holds, the sentencing judge had available meaningful alternatives, it seems to me that a statutory scheme that allows only (1) incarceration for life or (2) incarceration for a year or less is so irrational and arbitrary as to violate the Eighth Amendment. Even the State of Louisiana concedes that inherent in the prohibition of cruel and unusual punishment is the requirement that punishments be rationally related to the governmental interests and that punishments be meted out in a fair and rational manner.[13] I simply cannot conceive how the Louisiana scheme can possibly be deemed rational or nonarbitrary when it allows only two extremely divergent options—incarceration for a period not to exceed one year and incarceration for life.

### III.

As to Terrebonne's challenge to the constitutionality of the statute as applied to his particular situation, I adhere to the view expressed in my concurrence to the panel opinion. Prerequisite to a meaningful review is a full development of pertinent objective factors. As discussed in Part I of this dissenting opinion, I believe that, although the *Rummel* decision restricts the use of our three-pronged analysis in cases

of recidivist statutes, the analysis is nevertheless valid under the particular facts of this case. Moreover, *Rummel* indicates that other objective factors may be used to evaluate an Eighth Amendment claim. Until these factors are developed, any appellate review is merely a speculative exercise, an exercise in which I decline to participate.

I observe that, assuming the plurality's approach is an acceptable one, few, if any, criminal statutes could fail to pass Eighth Amendment standards. Even the example for which the *Rummel* Court explicitly acknowledged a disproportionality analysis would be proper—punishing overtime parking by life imprisonment—might withstand the test employed by the majority. Certainly a state has a "substantial interest" in regulating traffic, assuring ready access for all citizens to its parking facilities, and maintaining a general respect for the law. According to the majority of the judges on this Court, in order to legally justify the imposition of a life sentence commutable only by the Governor of the State only upon recommendation of the Board of Pardons, the Constitution requires no more.

I dissent.

### JERRE S. WILLIAMS, dissenting:

I concur in Judge Johnson's persuasive dissenting opinion with one caveat. I am doubtful that the three-pronged disproportionality test set out by this Court in *Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978), still retains the vitality Judge Johnson attributes to it in determining the validity of statutes such as that here involved. *Rummel v. Estelle*, 445 U.S. 263 (1980). But, absent the specific applicability and force of the three-pronged test, the opinion nevertheless stands as an effective statement of what should be the law of this case.

13. The following colloquy occurred during oral argument before the *en banc* Court:

Q: (by Judge Frank Johnson): Do you agree that when the legislature passes an act that mandates a certain sentence there must be some rational basis for the sentence that is mandated?

A: (by counsel for the State): Yes ....

Q: And a statute that does not allow any flexibility or a statute that does not have any rational basis is unconstitutional, can we assume that?

A: I'd assume that ....