Ricky TERREBONNE,
Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden,
Louisiana State Penitentiary,
Respondent-Appellee.

No. 86–3403.

United States Court of Appeals,
Fifth Circuit.

June 30, 1987.

Michael Vitiello, Loyola Law School, New Orleans, La. (court-appointed), for petitioner-appellant.

Ricky Terrebonne, pro se.

John J. Molaison, Jr., Elizabeth M. Gaudin, Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, La., for respondent-appellee.

Before GEE, REAVLEY, and JONES, Circuit Judges.

GEE, Circuit Judge:

This appeal resurrects an en banc controversy that divided our Court short years ago. *See Terrebonne v. Blackburn*, 646 F.2d 997 (5th Cir.1981). Nothing has changed since then except the Constitution: *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) now requires us to determine whether Terrebonne's sentence is disproportionate to his crime. That it is neither cruel nor unusual was settled on the former appeal.

Terrebonne's case is discussed at length in our en banc opinion cited. For present purposes, it suffices to say that he was, when convicted of heroin distribution, a 21 year old addict with two prior felony convictions, one for burglary and one for theft by fraud.

■■■ *Solem* directs us, in reviewing a sentence for disproportionality, to look first and primarily to the gravity of the offense and the harshness of the penalty. These are the same as they were on the former appeal, when we determined that such a life sentence as Terrebonne received—one with small likelihood of release, and none save in the event executive clemency is exercised—was not a cruel or unusual one for the offense of selling heroin. In so doing, we necessarily considered the gravity and harshness factors, for the sentence was obviously not a barbaric one; and we see no need to reconsider them today. It would be a rash magistrate indeed who would undertake to maintain that a life sentence is inappropriate for dealing in heroin. As our brother Reavley's pre-*Solem* special concurrence in our earlier en banc opinion states: "Terrebonne was given his sentence because he sold heroin. That ends the Eight Amendment inquiry for me ... [an inquiry] which should compare the sentence only to the severity of the *crime*." 646 F.2d, at 1003.

*Solem* also suggests that it may be "helpful" or "useful" in determining disproportionality to consider other objective criteria, offering as examples the sentences imposed on other criminals (and, presumably, for other crimes) in the sentencing jurisdiction and the sentences imposed by other jurisdictions for the same crime. 462 U.S., at 291–92, 103 S.Ct. at 3010. Obedient to that Court's suggestion (it is not stated as a requirement), we do so.

As for other sentences for the same crime in Louisiana—assuming that wildly disproportionate sentences for the same offense were meant to be forbidden by *Solem*—no issue is made on this appeal beyond a claim that sentencing an *addicted* dealer (such as Terrebonne) to life imprisonment is gravely disproportionate to imposing the same sentence upon a non-addicted dealer, a claim that we discuss below. Where other crimes are concerned, Louisiana provides the same sentencing plan for several violent crimes as it does for heroin dealing: murder, aggravated rape, aggravated kidnapping, and so on. Sitting en banc, we have already observed that Louisiana could properly equate heroin dealing with such crimes:

> The state could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude:
>
> ... The drug seller, at every level of distribution, is at the root of the pervasive cycle of drug abuse. Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank.
>
> *State v. Terrebonne*, supra, 364 So.2d [1290] at 1292 [1978], *quoting Carmona v. Ward*, [576 F.2d 405 (2d Cir.1978)] supra. Terrebonne willingly participated in the system of distribution, knowing the effects of the drug he procured.

*Terrebonne*, 646 F.2d, at 1002.

■■■ This observation of the en banc Court is patently correct, and we so hold. Except in rare cases, the murderer's red hand falls on one victim only, however grim the blow; but the foul hand of the

drug dealer blights life after life and, like the vampire of fable, creates others in its owner's evil image—others who create others still, across our land and down our generations, sparing not even the unborn.

■ As for a comparison of sentences imposed by other jurisdictions for Terrebonne's crime, the state cites us to several other jurisdictions where a life sentence is provided for heroin dealing: Arizona, Idaho, Missouri, Montana, Rhode Island, and Texas. It is true that these sentencing plans are more flexible and that, in most instances, parole is more easily available than in Louisiana. We are not disposed or authorized to quibble with the legislative judgment in the details of such matters, however. The availability of similar sentences in a substantial number of other states suffices to show that Louisiana's sentencing provision is not eccentric or outlandish.

■ Finally, Terrebonne makes much of two collateral facts: that the quantity of heroin which he sold was small, and that he was himself an addict, dealing drugs at least partly to feed his own habit. As to the first, while we must concede that dealing in large quantities of addictive drugs is marginally more reprehensible than dealing in smaller ones, for the reasons we have stated dealing in *any* quantity of such matter is a serious anti-social act. In addition, it seems apparent that the retail dealer who sells in small amounts to the ultimate consumer is as vital a component in the heroin distribution chain as any other; removing him would halt the evil just as surely as would removing the poppy grower. As to the second, many responses might be made, among them that it is of no help to those corrupted by Terrebonne that he is himself a victim of the scourge in which he traffics. Indeed, being all too familiar with the effects of what he sells, the dealer-addict, in his willingness to visit on others the personal ruin of which he has full experience for money, may well be seen as more, not less, culpable than another. And finally, to draw a bright line for punishment purposes between the addicted and non-addicted dealer would be simplistic and impractical: addiction is easy to claim, easy to feign, and hard to disprove. Let such a line once be drawn, and it will be a rare dealer who is a convict but not an addict.

We conclude that Terrebonne's sentence was not a disproportionate one to his crime. The judgment of the trial court is

AFFIRMED.

REAVLEY, Circuit Judge, Dissenting:

At the time of our prior decision I considered the Eighth Amendment proportionality inquiry to weigh the crime against the punishment, without regard to other circumstances personal to the defendant. *See Terrebonne v. Blackburn*, 646 F.2d 997, 1003 (5th Cir.1981) (Reavley, J., concurring). Subsequently, the Supreme Court has demonstrated my error by extending the consideration to factors of personal culpability of the defendant. *Solem v. Helm*, 463 U.S. 277, 292–93, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983). The Court in *Solem* also relied heavily upon the lack of benefit of parole in determining the Eighth Amendment violation. That teaching of the Court I regard as an entirely appropriate development of the Eighth Amendment "precept of justice that punishment for crime should be graduated and proportioned to offense." *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). By that teaching I am now directed to a different result and conclude that the sentence of Ricky Terrebonne violates the Eighth Amendment.

I

**Judging Proportionality**

In *Solem*, the Court announced three "objective factors" that should guide a court's proportionality analysis under the Eighth Amendment. It is of course necessary for a reviewing court to consider first "the gravity of the offense and the harshness of the penalty." 463 U.S. at 292, 103 S.Ct. at 3011. The Court also suggested that two other factors, "the sentences imposed on other criminals in the same jurisdiction," and "the sentences imposed for commission of the same crime in other jur-

isdictions," may be useful criteria for judging proportionality. *Id.* When such comparisons are useful, as in the present case, they should be employed.

### (i) Gravity of the Offense and Harshness of the Penalty

The panel majority takes full advantage of the substantial reprehension that the tag "heroin dealer" elicits when affixed to a defendant. However, we must now look at the conduct and circumstances of this individual offender for which he has been sentenced to life imprisonment without benefit of parole.

At the instigation of the police and using their funds, Terrebonne, a twenty-one year old drug addict, agreed to "score a bundle" of heroin (i.e., twenty-five packets of individual doses). Terrebonne contacted his "connection," and was able to obtain twenty-two packets for the agents. The agents allowed him to retain three packets as payment for the transaction, and they took the remaining nineteen. Terrebonne was convicted under La.Rev.Stat.Ann. § 40:966(A), (B) (West 1977), which prescribed a sentence of life imprisonment. Under the Louisiana sentencing scheme at that time, the judge only had discretion to impose one of two sentences: (1) an enforced life sentence or (2) a suspended life sentence with or without a term of probation. The judge imposed a sentence of life. Under Louisiana law, if this sentence is not commuted or pardoned by the Governor, Terrebonne will spend the rest of his life in prison.[1]

Without doubt, the crime of heroin distribution is a significant and serious one. However, not all "heroin dealers" are driven by similar motives; and the reprehensibility of Terrebonne's act must be measured, at least in part, by his motive. *Solem,* 463 U.S. at 293, 103 S.Ct. at 3011.

Terrebonne is an admitted addict, having had a habit at the time of the offense of five to six packets of heroin each day. *Terrebonne,* 646 F.2d at 999. Provided the opportunity by government agents, he agreed to "score a bundle" in order that he could feed his own habit. Terrebonne dealt in small quantities, made no profit, other than the perverted profit of the drug itself, and could hardly be considered as "vital a component in the heroin distribution chain as any other." Ante at 158.

Terrebonne has been sentenced to a lifetime in prison. And if he were a dealer who had distributed mass quantities of heroin to school children strictly for pecuniary gain, his punishment would have been the same. Obviously, it is not this court's role to grade the severity of various offenses for the State of Louisiana, and we "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009. However, when the punishment is "grossly disproportionate" to the offense, the Eighth Amendment demands our intervention. The degree to which the sentence in this case is disproportionate to the offense becomes clear when we compare it to sentences for similar crimes in Louisiana and for the same crime in other jurisdictions.

### (ii) Sentences for Similar Crimes

Although heroin distribution is not, strictly speaking, a "violent crime," this

---

**1.** Judge Frank Johnson, dissenting in *Terrebonne,* explained the Louisiana scheme for granting pardons as follows:

Under La.Rev.Stat.Ann. § 15:574.4 the Louisiana Board of Pardons is prohibited from granting parole to a person who has been sentenced to life imprisonment until after the life sentence has been commuted to a term of years. By La.Rev.Stat.Ann. § 15:572 and La. Const. art. 4, § 5, the Governor is granted the power to commute sentences upon the recommendation of the Board of Pardons. Thus, for Terrebonne to become eligible for parole, at least three of the five members of the

Board of Pardons must recommend the commutation of Terrebonne's sentence and the Governor must actually commute the sentence. *See* La.Rev.Stat.Ann. §§ 15:572, 15:574 (Supp.1981). A favorable recommendation from the Board of Pardons is similarly required for the Governor to issue a pardon. La.Const. art. 4 § 5. Actions by the Board of Pardons and the Governor in this field are totally discretionary, and "[n]o person [has] a right of appeal from a decision of the board of pardons or the governor regarding clemency." La.Rev.Stat.Ann. § 15:572.6.
646 F.2d at 1003 n. 4.

court previously observed that the State could "reasonably treat heroin distribution as a serious crime equivalent to a crime of violence." *Terrebonne*, 646 F.2d at 1002. I continue to agree with this assessment. Yet Louisiana does not punish all perpetrators of "violent crimes" with life imprisonment without benefit of parole. As it should, Louisiana draws distinctions, taking severity and culpability into account in much of its sentencing scheme. For example, first degree murder, La.Rev.Stat.Ann. § 14:30(C), second degree murder, La.Rev. Stat.Ann. § 14:30.1, aggravated rape, La. Rev.Stat.Ann. § 14:42(C), and aggravated kidnapping, La.Rev.Stat.Ann. § 14:44, are all punishable by life terms without benefit of parole; in contrast, aggravated battery, La.Rev.Stat.Ann. § 14:34, aggravated assault, La.Rev.Stat.Ann. § 14:37, aggravated arson, La.Rev.Stat.Ann. § 14:51, and armed robbery, La.Rev.Stat.Ann. § 14:64(B) are not similarly punished.

Without doubt, *under some circumstances* distribution of heroin is as serious an offense as murder, or any of the other crimes for which Louisiana levies life imprisonment without benefit of parole. However, Terrebonne's offense, while quite serious, does not match these heinous crimes of violence. The defect in the Louisiana sentencing scheme is that it leaves the trial judge the discretion only to choose between imposing an enforced life sentence and suspending the sentence. Such a choice is no choice at all. Thus, I believe that Terrebonne "has been treated in the same manner as, or more severely than, criminals who have committed far more serious crimes." *Solem*, 463 U.S. at 299, 103 S.Ct. at 3014.

### (iii) Sentences For The Same Crime in Other States

The majority opinion observes correctly that several states, including Arizona, Ida-

ho, Missouri, Montana, Rhode Island and Texas, provide life sentences for heroin distribution. My colleagues go on to admit, however, that "these sentencing plans are more flexible and that, in most instances, parole is more easily available than in Louisiana." Ante at 158. Yet, paradoxically, they assert, "[w]e are not disposed or authorized to quibble with the legislative judgment in the details of such matters." *Id.* But ineligibility for parole is hardly a detail being "quibbled with"; and if it is, it is the very kind of detail *Solem* directs us to "quibble with."

In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Court placed particular emphasis on the fact that the defendant would be eligible for parole after twelve years under the Texas habitual offender statute.[2] 445 U.S. at 280–81, 100 S.Ct. at 1142–43. And in *Solem*, the defendant's ineligibility for parole was the single fact distinguishing that case from *Rummel*. 463 U.S. at 300, 103 S.Ct. at 3015. Our cases have noted on several occasions that the primary consideration in these cases "seems to be whether or not parole is available to the defendant within a reasonable period of time." *Moreno v. Estelle*, 717 F.2d 171, 180 (5th Cir.1983); *Whitmore v. Maggio*, 742 F.2d 230, 234 (5th Cir.1984). The importance of the availability of parole for proportionality assessment was explained in *Solem* as follows:

As a matter of law, parole and commutation are different concepts, despite some surface similarities. Parole is a regular part of the rehabilitative process. Assuming good behavior, it is the normal expectation in the vast majority of cases. The law generally specifies when a prisoner will be eligible to be considered for parole, and details the standards and procedures applicable at that time.... Thus it is possible to predict, at least to some extent, when parole might be

---

**2.** The *Rummel* Court made the following observation regarding parole eligibility:

[A] proper assessment of Texas' treatment of Rummel could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life. If nothing else, the possibility of parole, however slim, serves to distinguish

Rummel from a person sentenced under a recidivist statute like Mississippi's, which provides for a sentence of life without parole upon conviction of three felonies including at least one violent felony.

445 U.S. at 280–81, 100 S.Ct. at 1142–43.

granted. Commutation, on the other hand, is an ad hoc exercise of executive clemency. A Governor may commute a sentence at any time for any reason without reference to any standards.

463 U.S. at 300–301, 103 S.Ct. at 3015.

Louisiana is the only state that provides mandatory life imprisonment without benefit of parole for a single drug offense; indeed, Montana is the only other state that singles out drug offenses for special exemption from parole provisions, and there only in cases of multiple drug convictions. Every other state of the Union affords much greater flexibility in order that sentences match the severity of the offense.

After applying the analysis required by the *Solem* Court, I regard Terrebonne's sentence of life imprisonment without benefit of parole as *grossly disproportionate* to the offense for which he was convicted. I respectfully dissent from the decision to uphold the constitutionality of the sentence.